LUMBERMEN'S UNDERWRITING
ALLIANCE, Appellant,

v.

Dorothy Lane BELL et al., Appellees.

No. 1298.

Court of Civil Appeals of Texas,
Tyler.

Jan. 31, 1980.
Rehearing Denied Feb. 28, 1980.

William D. Perkins, Lufkin, for appellant.

C. A. Keeling, Martin & Keeling, Longview, for appellees.

McKAY, Justice.

This is an appeal by the insurance carrier, Lumbermen's Underwriting Alliance, form a judgment based upon a jury verdict awarding death benefits to Dorothy Lane Bell, as next friend for her minor son, Vincent B. Bell, under the Workers' Compensation Act. The minor was the son of Louis L. Whitaker, the deceased workman.

Whitaker was a 32 year old man who was an employee of Nacogdoches County Lumber Company. On May 20, 1977, a hot day with temperature in the 90's and with no breeze blowing, he was engaged in stacking lumber out in the sun. For the two weeks preceding his death Whitaker had worked under a shed, but on the day of his death he was in the sun stacking green $2 \times 12$'s that were 16 to 20 feet long. After his thirty minute lunch break he went back to work and, after a few minutes, he sat down for a while, then staggered across the street and fell down. He was taken home by automobile and then delivered by ambulance to the Nacogdoches Memorial Hospital where he received emergency treatment but died after a short time. The attending physician, Dr. Bill Henderson, in the death certificate and by testimony, stated that death was caused by cardiac arrest due to heat stroke with causes unknown. Dr. Franklin J. Rude, a pathologist, performed an autopsy.

After an appeal from the Industrial Accident Board, the appellees sought full death benefits in the trial court, while appellant alleged that the sole producing cause of the death of Whitaker was that he had taken drugs named Mellaril and Navane which caused or produced the abnormally high temperature associated with the heat stroke. The jury found that Whitaker sustained a heat stroke suffered in the course of his employment, which heat stroke was the producing cause of his death, and the trial court rendered judgment for appellees for lump sum payment and allocation of attorney's fee. Appellant brings sixteen points of error.

Appellant's first eleven points are argued together, and they complain that the trial court erred in failing to admit circumstantial evidence that the deceased's death was caused by medication which was taken for a nervous disorder rather than by the heat stroke. In its Bill of Exceptions appellant sought to have admitted before the jury the following items of circumstantial evidence: that the deceased was taking Navane and Mellaril for a nervous condition which occurred after he returned from Vietnam; that he had been treated for this condition six months before his death; that the medicine was kept in the deceased's bedroom dresser drawer; that the hospital records reflected that the deceased had used Navane and Mellaril; that the pathologist, Dr. Rude, concluded in the autopsy that the drugs were a factor in the death; and testimony by Dr. Jack Pruitt that the two drugs could cause an elevation of body temperature and that, in his opinion, the drugs caused the deceased's death. It is our view that these points should be overruled.

To establish a fact by circumstantial evidence the circumstances relied upon must have probative force sufficient to constitute a basis of legal inference; it is not enough that they raise a mere surmise or suspicion of the existence of the fact or permit a purely speculative conclusion. *Green v. Texas & P. Ry. Co.,* 125 Tex. 168, 81 S.W.2d 669, 673 (Tex.Comm.App.1935, opinion adopted); *Mobile, Inc. v. Cone,* 457 S.W.2d 175, 176 (Tex.Civ.App.—Tyler 1970, writ ref'd n. r. e.); *Bledsoe v. Yarborough,* 422 S.W.2d 222, 227 (Tex.Civ.App.—Tyler 1967, no writ); *Williams v. Rearick,* 218 S.W.2d 225, 229 (Tex.Civ.App.—Amarillo 1949, no writ). Although facts may be established circumstantially, the circumstances themselves must be shown by direct evidence, and cannot be inferred from other circumstances nor can a presumption of fact rest upon a fact presumed; in other words, it is not admissible to go into the domain of conjecture and pile one presumption upon another. *Green v. Texas and Pacific Railway Co.,* supra; *Williams v. Rearick,* supra. Moreover, if an inference consistent with

the existence of a fact in issue is but equally as valid as an inference of its nonexistence, and there is no evidence to support the conclusion that the inference of the particular fact is more reasonable, the question may not be submitted to the jury. *Adams v. Smith,* 479 S.W.2d 390, 398 (Tex. Civ.App.—Amarillo 1972, no writ); *Azores v. Samson,* 434 S.W.2d 401, 405 (Tex.Civ. App.—Dallas 1968, no writ); *Bledsoe v. Yarborough,* supra. After a careful examination of the statement of facts, it is our opinion that the evidence raises no more than a surmise or suspicion that the deceased's death was caused by the aforementioned drugs.

Appellant's position that the deceased's death was caused by ingestion of the drugs rather than the heat stroke is necessarily premised upon a showing that the deceased had actually taken the drugs on or near the date of death. This crucial fact was never established by the appellant. Significantly, there is direct evidence which established that the deceased had stopped taking the medicine long before he died. Erma Lee Sanders, the mother of the deceased, testified as follows:

A They asked me was he taking any medication, yes.

Q And what did you say?

A I told them no.

Q All right. In your deposition I believe you said that he had been taking some medicine.

A Well, not recently. In some time ago he had been.

Q How long ago had he been taking that?

A About a year or two since he had been on medication.

Appellant points to the testimony of Dr. Jack Pruitt to support its position that the deceased's death was caused by the drugs. Even though Dr. Pruitt testified that a drug reaction caused the death the record clearly shows that his conclusion is based on the assumption that the deceased actually took the drugs. Notably, Dr. Pruitt stated: "Now, I'd have to know for sure that he really was taking these drugs and apparently that wasn't established, but if that history were accurate then I'd say that that was the more probable cause of death of these two."

Additionally, appellant attempts to rely upon the hospital report and the autopsy to show that the deceased actually took the drugs at or near the date of his death. An examination of those documents reveals that they lend no support to appellant's position. The hospital report merely shows that the deceased possessed the drugs;[1] it does not state that the deceased had actually ingested the drugs on or near the date of death. The autopsy does not contain any conclusion by Dr. Rude concerning the effect the drugs had on the deceased's death; it states that the cause of death was "hyperpyrexia resulting in fibrin thrombi and related bleeding in lungs and brain." We conclude that the record in this case is devoid of any evidence to establish that the deceased actually took Navane or Mellaril or at near the date of his death; therefore, it is our view that the trial court did not err in excluding the aforementioned evidence.

■ Appellant's points of error number twelve and thirteen complain that there is no evidence or insufficient evidence to support the jury's answer to Special Issue No. 2 wherein the jury found a heat stroke was sustained in the course of Louis Whitaker's employment. Appellant's fourteenth point of error complains that the jury's answer to Special Issue No. 2 is against the great weight and preponderance of the evidence. These points are argued together. We find no merit to these points and accordingly, they are overruled.

Initially it appears that the appellant's arguments under these points are inapposite because they attack the sufficiency of the evidence to support the jury's finding that the cause of death was a heat stroke.

1. The record shows that the deceased's mother obtained the drugs from the deceased's bedroom and gave them to the ambulance drivers.

This argument should have been directed toward Special Issue No. 1 which concerned the cause of death rather than toward Special Issue No. 2, which concerned whether the heat stroke was sustained in the course of employment. In any event it is our view that there is sufficient evidence to support both special issues. Dr. Henderson, the physician who attended Louis Whitaker in the emergency room, testified that, based on reasonable medical probabilities, a heat stroke caused the deceased's cardiac arrest; that the exertion and effort the deceased was expending in stacking the lumber precipitated the heat stroke; and that the circumstances under which the deceased worked subjected him to a greater risk of heat stroke than the general public would have been.

■ Appellant's fifteenth point of error contends that the trial court erred in refusing to admit evidence concerning the drugs because appellees' counsel did not make a specific and clear objection against the introduction of the evidence. Under this point appellant complains that it was never informed with sufficient specificity as to exactly what was objectionable concerning the testimony. We find this point to be without merit and is therefore overruled.

The record reflects that the admissibility of evidence concerning the effect of the medication was adequately presented to the court and discussed by the court and counsel before any evidence was offered to the jury. Additionally, this issue was discussed when appellees' Motion in Limine was presented to the trial court. The record shows that appellant was well aware that any testimony concerning the effect of the medication would be speculative unless it could be established by competent evidence that the deceased actually took a dosage of the medicine on or about the date of his death that could have caused his death. Furthermore, while attempting to persuade the trial court to admit the evidence, counsel for appellant stated: "I don't know whether or not the man took any that day or whether he had taken any the day before or how many doses he had taken or when he had taken them." Thus it was abundantly clear to appellant that the speculative nature of the evidence was at issue.

■ Appellant's sixteenth point of error complains that the trial court erred in failing to permit appellant to offer evidence concerning the drugs because appellees counsel "opened the door" to the introduction of such evidence. We find no merit to this contention and it is overruled.

The judgment of the trial court is affirmed.