**TEXAS DEPARTMENT OF CORRECTIONS, Appellant,**

v.

**James Lee JACKSON, Appellee.**

**No. 01-82-0455-CV.**

Court of Appeals of Texas, Houston (1st Dist.).

July 28, 1983.

Rehearing Denied Dec. 8, 1983.

Jack Sparks, Austin, for appellant.

Thomas F. Rugg, Port Arthur, for appellee.

Before DUGGAN, LEVY and JACK SMITH, JJ.

## OPINION

JACK SMITH, Justice.

This is a suit to recover damages for personal injuries received while the appellee was an inmate in the Texas Department of Corrections (T.D.C.). The suit was filed under the Texas Tort Claims Act, TEX. REV.CIV.STAT.ANN. art. 6252–19. Trial was to a jury, and based upon the answers to the issues, the trial court entered judgment for the appellee in the sum of $50,000. T.D.C., the appellant, has raised four points of error.

The appellee was trained as an electrical lineman while he was an inmate at T.D.C. His tools and equipment, including the tool belt involved in this case, were supplied by T.D.C.

On August 18, 1977, the appellee's work assignment required him to climb a utility pole and do maintenance work on one of the transformers at a T.D.C. unit. After completing his work and while attempting to reconnect and reactivate an electrical wire, the appellee received a severe electrical shock. As a result of the shock, the appellee received burns which eventually required the amputation of his left arm.

No witness, including the appellee, was able to testify as to what caused the shock. The appellee testified that he could not remember what happened, but speculated that his tool belt slipped, and as he was falling back, he instinctively reached up and grabbed a cross arm and a fuse. The appellee's supervisor and his co-workers could not state exactly how the appellee was shocked. However, these witnesses speculated that

the appellee probably got too close to the "hot wire" and that this caused his injuries.

The appellee testified that the tool belt he was using had slipped on several occasions, and that he had complained about it to both of his supervisors. He stated that he was first ignored or unheard, and then later was refused a replacement. His supervisors testified that they did not remember such requests.

In its first point of error, the appellant contends that the trial court erred in entering judgment for the appellee because the pleadings were insufficient to support the submission of special issues. Those allegations made by the appellant which are relevant to this appeal are as follows:

(c) Defendant was negligent in furnishing the Plaintiff with a tool belt which was not "full-floating" making it more than ordinarily hazardous to perform lineman's work in the area of energized power lines;

(d) Defendant was negligent in furnishing Plaintiff with a tool belt with "Square D" rings which have the propensity to bind with the safety strap and did so bind in this case creating for Plaintiff the sensation of falling.

Special Issues number one and two were submitted concerning the appellant's negligence in failing to replace the tool belt. They are as follows:

*Special Issue Number One*

Do you find from a preponderance of the evidence that the Defendant was negligent in failing to replace the tool belt being used by the Plaintiff, JAMES LEE JACKSON?
Answer "We do" or "We do not."
Answer: <u>We do.</u>

*Special Issue Number Two*

If you have answered Issue No. 1 "WE DO", then, and only then answer Issue No. 2; otherwise, do not answer Issue No. 2.
Do you find from a preponderance of the evidence, that the Defendant's failure to replace the tool belt was a proximate cause of the injuries and damages to the Plaintiff, JAMES LEE JACKSON?
Answer "We do." or "We do not."
Answer: <u>We do.</u>

The appellant contends that the appellee's allegations that the appellant was negligent in "furnishing" the tool belt to the appellee do not comport with the question asked in Special Issue Number One, i.e. [whether] the defendant was negligent in "failing to replace" the tool belt.

The function of pleadings is to define the issues at trial. *Safety Casualty Co. v. Wright,* 138 Tex. 492, 160 S.W.2d 238 (1942). Pleadings should give fair and adequate notice of the facts upon which the pleader relies in order that the adverse party may properly prepare his defense thereto. *Stone v. Lawyer's Title Insurance Corp.,* 554 S.W.2d 183 (Tex.1977). In order for a variance to be fatal it must be a substantial, misleading and prejudicial departure from the pleadings. *Stone, supra.*

A review of the statement of facts in the instant case reveals that the case has been fully developed insofar as the evidence is concerned. The appellant does not contend that other evidence may have been produced. Neither does it complain of lack of notice or the opportunity to prepare an adequate defense. Thus, unless the use of the phrase "failing to replace" in lieu of the word "furnishing" rises to the level of being "substantial, misleading and prejudicial", it is not a fatal variance. *Stone, supra.*

In the instant case it appears that the phrase "failing to replace" encompasses the alleged furnishing of the tool belt to the appellee. There is nothing in the record to indicate that the appellant was misled, surprised or prejudiced by the wording of Special Issues Number One and Two. The appellant's first point of error is overruled.

In point of error number two, the appellant asserts that there was no evidence to sustain the jury's answer that the failure to replace the tool belt was the proximate cause of the appellee's injuries.

The record reveals that at the time the appellee was injured he was attempting to reactivate and connect a hot wire. He was endeavoring to accomplish this by reaching upward with a long pole, called a shotgun, which had a device at the end of the pole to assist in connecting the wire to the transformer. While he was reaching upward, the electrical current apparently "jumped" from the hot wire to the appellee's left arm. The appellee could not remember anything about the accident, including whether or not the tool belt slipped. His supervisor and another person, an inmate, had momentarily stopped observing the appellant when the accident occurred.

The appellee testified that because his tool belt had slipped on previous occasions and because of his knowledge of the way he was positioned on the pole on the day of the incident, he was of the opinion that the belt must have slipped, and that he instinctively reached up to grab something and was shocked. When the appellant awoke in the ambulance, he had a sensation of falling and tried to grab the stretcher; he reasons that this too is indicative of the possibility of his belt slipping.

The T.D.C. supervisor testified that although he did not actually see the appellee get shocked, he observed the appellee reaching with the "shot gun" to make the reconnection. At that time the appellee was in a safe position and had not done anything unsafe. It was his opinion that when the appellee reached up with the "shotgun" to make the connection he got too close to the hot wire and received the electrical shock.

The other inmate who was at the scene of the accident testified to substantially the same facts as the appellee and their supervisor. He was of the opinion that the appellee got too close to the hot wire when he reached up to connect it because "[T]hat was the only way that he could have gotten bitten by it."

■ In reviewing the evidence, we find no direct testimony or circumstantial evidence that the appellant's failure to replace the tool belt was the proximate cause of the appellee's injuries. The appellee did not testify that he felt or even remembered that his belt slipped. His testimony concerning how the electricity entered and exited his body concerns only the characteristics of electricity and its propensities. He did not testify that he instinctively reached up because his belt slipped, but only theorized that this might have happened. An ultimate fact may be established by circumstantial evidence, but the circumstances relied upon must have probative force sufficient to constitute a basis of legal inference. It is not enough that the facts raise a mere surmise or suspicion of the existence of the fact or permit a purely speculative conclusion. The circumstances relied on must be of such a character as to be reasonably satisfactory and convincing, and must not be equally consistent with the non-existence of the ultimate fact. *Smith v. Tennessee Life Insurance Co.,* 618 S.W.2d 829 (Tex. Civ.App.—Houston [1st Dist.] 1981, no writ).

■ The appellee's testimony is mere speculation of what might have happened.

There is no evidence of probative force that the appellant's failure to replace the tool belt was the proximate cause of the injuries received by the appellee. The appellant's second point of error is sustained.

■ In its third point of error, T.D.C. alleges that it has governmental immunity except for a limited waiver thereof created by the Texas Torts Claims Act. The appellant asserts that the appellee failed to bring himself within the waiver provisions of the act, because the negligence of State employees does not constitute a waiver of governmental immunity.

In the instant case, the appellee alleged that the appellant furnished him with a tool belt which was not "full-floating", making it more than ordinarily hazardous to perform lineman's work in the area of energized wire lines. He also alleged that the tool belt had "Square D" rings which have the propensity to bind with the safety strap and did so bind.

The Texas Tort Claims Act in § 3 of art. 6252–19 states, in pertinent part as follows:

Each unit of government in the state shall be liable for money damages for property damage or personal injuries or death when proximately caused.... from some condition or some use of tangible property, real or personal, under circumstances where such unit of government, if a private person, would be liable to the claimant in accordance with the law of this state.

The appellant's contention that the negligence of state employees does not constitute a waiver of governmental immunity created by the Texas Tort Claims Act is not the issue in the instant case. The issue is whether the appellant furnished and failed to replace a tool belt which was insufficient or inappropriate for the purpose for which it was used. We hold that the appellee's pleadings and proof were sufficient to bring him within the waiver of governmental immunity created by the Texas Tort Claims Act. The appellant's third point of error is overruled.

In its final point of error the appellant alleges that the pleadings and the jury's verdict are insufficient to sustain the judgment for the appellee. This point of error is essentially a reiteration of the appellant's first three points of error. We agree that the evidence is insufficient to support the jury's answer to Special Issues Number Two. However, we find no necessity to recapitulate what we have previously discussed. The appellant's fourth point of error is overruled in so far as it applies to Special Issue One. It is sustained as to Special Issue Two.

The judgment of the trial court is reversed, and judgment is rendered that the appellee take nothing.

LEVY, J., dissents.

LEVY, Justice, dissenting.

I respectfully dissent.

My disagreement with the majority focuses on its sustaining appellant's second point of error, that there was no evidence to sustain the jury's finding that the failure to replace the tool belt was the proximate cause of appellee's injuries.

Conceding that there was no direct evidence on this point, I nevertheless feel that the majority ignores the important principle, as stated in its own opinion, that an ultimate fact may be established by circumstantial evidence. *Freeman v. Texas Compensation Insurance Co.,* 586 S.W.2d 172 (Tex.Civ.App.—Fort Worth, 1979, aff'd on other grounds). Appellee testified that his tool belt had slipped on prior occasions and that he had notified appellant that it was defective, but appellant had refused to replace it. Because of his knowledge of the way he was positioned on the pole, the path of the electrical current entering, crossing, and exiting his body, and his knowledge of the theory and characteristics of electricity, appellee testified that he was convinced that the belt must have slipped, and that he instinctively reached up to grab something and was shocked.

Appellee's supervisor and a co-worker, though both otherwise preoccupied at the precise moment of the shock, speculated on the basis of their experience that appellee got too close to the hot wire (presumably when he reached up to steady himself), thereby precipitating the shock.

In reviewing the record on the "no evidence" point, this court must consider only the evidence and reasonable inferences therefrom which, viewed in their most favorable light, support the trial court's judgment, and must disregard all the evidence and inferences to the contrary. *Bounds v. Caudle,* 560 S.W.2d 925 (Tex.1977); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1952); *Estate of Claveria v. Claveria,* 615 S.W.2d 164 (Tex.1981). Because we must presume the jury's findings to be in support of the judgment, we are obligated to affirm the judgment if it can be sustained on any legal theory supported by the pleadings and the evidence. Accordingly, I would hold that the foregoing circumstances have sufficient probative force to constitute a basis of legal inference supporting the jury's findings. *Smith v. Tennessee Life Insur-*

*ance Co.,* 618 S.W.2d 829 (Tex.Civ.App.— Houston [1st Dist.] 1981, no writ); *Lumbermen's Underwriting Alliance v. Bell,* 594 S.W.2d 569 (Tex.Civ.App.—Tyler 1980, writ ref. n.r.e.).

Agreeing with the other elements of the majority's decision, I would affirm the trial court's judgment in all respects.