Matthew A. SUMMERS, B/T His Guardian Mary Alice Summers and Suzanne Summers, Appellants,

v.

The FORT CROCKETT HOTEL, LTD., Mitchell Energy & Development Corporation, Corporation of the Southwest, and Morris & Aubrey, Appellees.

No. 01–94–00504–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 25, 1995.

Rehearing Overruled July 13, 1995.

Ralph D. Huston, Houston, for appellants.

George W. Vie, III, Galveston, for appellees.

Before O'CONNOR, HUTSON–DUNN and WILSON, JJ.

1. Defendant Morris & Aubrey was nonsuited. The Fort Crockett Hotel, Ltd. owns the San Luis Hotel.

## OPINION

O'CONNOR, Justice.

The issue in this case is whether a defendant is entitled to a summary judgment when there is no direct proof of causation and the circumstantial evidence is susceptible to conflicting inferences. We hold he is.

The appellant, Matthew Summers, through his guardian Mary Alice Summers (Mrs. Summers), appeals from a summary judgment granted the appellees, Fort Crockett Hotel and Mitchell Development Corporation (collectively, the hotel).[1] Mrs. Summers sued the hotel for negligence after her son fell four stories from the balcony of a hotel room. We affirm.

### Fact Summary

In the afternoon of July 12, 1986, Matthew Summers (Matthew), joined his mother and his brother, Michael Summers, at the San Luis Hotel in Galveston for a family party in celebration of Matthew's 25th birthday. Only Mrs. Summers and Michael were booked in the room; they slept on the two double beds. Matthew decided to stay over and sleep on the floor. The room was on the eighth floor.

Matthew and his family spent the afternoon around the pool. Michael Summers stated in his deposition that his brother had about four beers at the poolside. Later, Matthew went to a liquor store and purchased a bottle of Jack Daniels. The three of them took the bottle with them when they went to Gaido's for a late dinner. In her deposition, Mrs. Summers said Matthew had one drink at Gaido's, purchased from the restaurant. After dinner, the three of them went to a country and western dance club where they shared the bottle of Jack Daniels. They each had about three drinks. Around midnight, they left the club and went back to the hotel. Michael went up to the room but Matthew and his mother then went to the lounge at the San Luis where they each had one drink and danced. After about an hour,

Matthew and his mother went to the hotel room. Mrs. Summers went to sleep.

Matthew went back downstairs to the hotel's hot tub. About an hour later, he returned to the hotel room, which was located on the eighth floor. He knocked on the door and his mother let him in. They talked briefly and then Matthew told his mother he was going to go out onto the balcony to look at the water. Mrs. Summers said she heard the sliding glass door to the balcony shut and she went to sleep.

About 5:30 a.m., Mrs. Summers awoke to flashing lights on the sliding glass door. When she went to the balcony, police asked her if anyone was missing from the room—that someone had been found on the roof of the building four flights below. She realized Matthew was not in the room. No one witnessed the fall. Matthew has been in a persistent vegetative state since the accident.

Mrs. Summers sued the hotel for negligence, alleging the hotel knew of the unreasonably dangerous condition of the railing—the low height and large width. In her petition, Mrs. Summers also alleged the hotel did not warn that the use of the hot tub in connection with alcohol could cause changes in blood pressure, pulse rate, or problems with balance. Mrs. Summers also alleged that employees and agents of the hotel were negligent in serving Matthew alcohol. Mrs. Summers pled damages of $12 million. Matthew's wife, also a plaintiff in the suit, sought damages of $1 million.[2]

### The hotel's motion for summary judgment

The hotel moved for summary judgment on eight grounds, and the plaintiffs responded to each ground. Below is a summary of their arguments.

| THE HOTEL'S ARGUMENTS | THE PLAINTIFF'S RESPONSE |
|---|---|
| No one knows what caused Matthew to fall from the balcony and any theory that his fall was caused by a defect in the balcony or the use of the hot tub can only be speculation. | There are only three possibilities why Matthew fell—he jumped, he was pushed, or he fell. Mrs. Summers contends she presented evidence that eliminated the possibility her son jumped or was pushed; thus, he must have fallen accidentally. If he fell, it must be because of the balcony's height and design. |
| The height, diameter, and design of the balcony railing were not unreasonably dangerous because they complied with all building standards. Nothing about the balcony, including its railing, posed an unreasonable risk of harm. | Even though the railing met the minimum standards of the building code, it does not mean the hotel is not liable. Compliance with a statute does not preclude a finding that the railing was unreasonably dangerous. |
| The railing was a sufficient warning itself. Because the hazards were open and obvious, there was no duty to warn. | The hotel should have posted a warning on the balcony that the railing met the minimum standards but was of too great a diameter to afford a grip. |
| The hotel was not negligent in failing to warn Matthew about the use of hot tubs and alcohol. The use of the hot tub, two hours before the accident, was not a proximate cause. | There are fact issues with regard to the effect of the use of the hot tub and consumption of alcohol. |
| The hotel was not negligent because it had no notice of defects in the premises. | The design and height of the balcony handrails was a permanent condition of which the defendants had more than adequate notice. |
| The hotel did not control the hotel beverage service. | The alcohol in question was served on the hotel premises. |

2. Suzanne Summers and Matthew had separated about a year before the accident.

Because Matthew was not registered, he was a trespasser; alternatively, he was a licensee.[3]

There are fact issues on Matthew's status as a licensee or a trespasser.

---

### The hotel's summary judgment evidence

Attached to the hotel's motion for summary judgment are: (1) the affidavit of James M. Davis, an architect, (2) excerpts from the building code, (3) excerpts from the depositions of Mrs. Summers and Michael Summers, the brother, (4) the affidavit of Ron Vuy, the hotel manager, (5) the affidavit of David Mollendor, another hotel manager, (6) a copy of the hotel bill, (7) a copy of the hotel incident report, (8) excerpts from the deposition of Dr. David E. Clement, an engineer, (9) the affidavit of Burt Cabanas, senior vice president for the Woodlands Corporation, who supervised the management of the hotel at the time of the incident, and (10) the affidavit of Lee D. Tracy, an engineer.

In his affidavit, Davis stated that in his opinion a 42–inch high balcony railing—the height of the one in question in this case—is not unreasonably dangerous for a person.[4] He also stated that the height, diameter, and design of the balcony railing complied with all applicable building codes and the design is one that is typical in the industry. The hotel also included excerpts from the Southern Standard Building Code (1960–61) that states that guard rails for dwellings and within individual dwelling units or rooms may be 36 inches high. In the excerpts from Mrs. Summers deposition, she states that Matthew was not a registered guest at the hotel, and that he did not appear intoxicated at any point during the evening. In the excerpt from Michael Summers, he states that his brother did not show any signs of intoxication, and had full control of his faculties.

In the affidavits of both Vuy and Mollendor, the two managers at the San Luis Hotel stated there had not been any other incidents involving the balcony railings, balcony door sills, or the hot tub. The hotel bill lists three times purchases were made from the hotel bar the night of the incident, totaling $66.99. The hotel incident report stated that the guests in the fourth floor room heard a loud crash about 5:30 a.m. and then saw a man unconscious outside their window. The report stated that an empty beer bottle and a quart of Jack Daniels two-thirds empty were found in Matthew's hotel room. In his deposition, Clement stated that no one knows how Matthew got over the balcony.

In his affidavit, Cabanas stated that there were never any other incidents or complaints involving the balcony railing, balcony door sills, or the hot tub brought to his attention. In his affidavit, Tracy, a loss prevention manager, stated that the handrails on the balconies were installed according to design and that he conducted regular visual site surveys of the balconies and had not observed any deterioration.

### Summers' summary judgment evidence

Attached to the response are: (1) the deposition of Mrs. Summers, (2) the deposition of Michael Summers, (3) the deposition of Dr. Harold Bursztajn, a psychiatrist, and (4) the deposition of David E. Clement, an engineer.

In his deposition, Dr. Bursztajn stated Matthew showed no signs of depression and there was no evidence of a suicide attempt. Bursztajn stated that Matthew had a blood alcohol level of "170" or .17 at the time of the incident[5] and had two driving-while-intoxicated convictions. In his deposition, Clement stated that the top rail of the balcony was 42

---

**3.** The plaintiffs conceded that the sill of the balcony door did not play any part in the accident. That ground is omitted from this list.

**4.** Matthew Summers stood about 5 feet 9 inches tall.

**5.** For purposes of most intoxication offenses, a person is considered legally intoxicated with a blood alcohol level of .10 or higher in Texas. Tex.Penal Code Ann. § 49.01(2)(B) (Vernon Pamph.1995).

inches high and the bottom rail two and seven-eighths inches above the floor of the balcony. Clement stated Matthew's waist level would be about 39 inches. Clement stated that the railing at the balcony was not adequate for the protection of guests at the hotel. Clement stated that the balcony environment could have been safer, but did not know how Matthew got over the rail and he could only speculate using hypotheticals. Clement stated he would make the top rail six to 10 inches higher and have a top rail that could be grasped easier.

### Standard of review

For summary judgment to be proper, the movant must prove it is entitled to judgment as a matter of law, and there are no issues of material fact. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991); *Mayer v. State Farm Mut. Auto. Ins. Co.*, 870 S.W.2d 623, 624 (Tex.App.—Houston [1st Dist.] 1994, no writ). For a defendant to be entitled to summary judgment, the defendant must disprove, as a matter of law, one of the essential elements of the plaintiff's cause of action. *Lear Siegler*, 819 S.W.2d at 471. On review, we view the evidence in the light most favorable to the non-movant. *See id.* When a summary judgment does not specify the ground upon which the trial court granted it, the reviewing court will affirm the judgment if any one of the theories advanced in the motion is meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989).

In its judgment, the trial court did not specify the ground on which the summary judgment was granted. We note that before issuing the judgment, the trial judge wrote a letter to the parties explaining he planned to grant the summary judgment and giving his reasons. We consider only the judgment. The court denied a motion for new trial.

### Proximate cause

In point of error one, Mrs. Summers contends the court erred in granting the hotel's motion for summary judgment by holding as a matter of law that she cannot recover without direct evidence of the cause of the incident in question, thus imposing an improper burden upon her. Mrs. Summers contends the preponderance of the evidence establishes that Matthew accidentally fell from the balcony, and that regardless of the manner in which he fell, the height and design of the balcony railing were two of the causes of the fall.

The hotel contends that Mrs. Summers did not meet her burden of proving causation and that there is no evidence that the hotel's negligence caused the fall. The hotel asserts that once it provided evidence to support its right to summary judgment, it was Mrs. Summers' burden to raise an issue of material fact. The hotel contends that Mrs. Summers' claims are based only on speculation, not direct or circumstantial evidence.

We agree with the hotel. We have held before that causation cannot be established by surmise or suspicion.

> An ultimate fact may be established by circumstantial evidence, but the circumstances relied upon must have probative force sufficient to constitute a basis of legal inference. It is not enough that the facts raise a mere surmise or suspicion of the existence of the fact or permit a purely speculative conclusion. The circumstances relied on must be of such a character as to be reasonably satisfactory and convincing, and must not be equally consistent with the non-existence of the ultimate fact.

*Texas Dep't of Corrections v. Jackson*, 661 S.W.2d 154, 157 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.).

To prove negligence, the plaintiff must show (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, and (3) the defendant's negligence was the proximate cause of the plaintiff's injuries. *St. James Transp. Co., Inc. v. Porter*, 840 S.W.2d 658, 664 (Tex.App.—Houston [1st Dist.] 1992, writ denied). Proximate cause in Texas consists of two elements: (1) cause in fact and (2) foreseeability. *Farley v. M M Cattle Co.*, 529 S.W.2d 751, 755 (Tex.1975). Both of these elements must be present. *Id.* Although proximate cause may be established by circumstantial evidence, it cannot be established by mere conjecture or guess, but rather must be proved by evidence of probative force. *Id.*

This Court considered a similar question in a negligence action in *TDC v. Jackson.* In *Jackson,* an inmate sought to recover damages for personal injuries suffered when he attempted to reconnect and reactivate an electrical wire. *Id.,* 661 S.W.2d at 155. The inmate suffered a severe electrical shock and his left arm was amputated. *Id.* No one witnessed what caused the shock and the inmate could not remember what happened. *Id.* The inmate speculated that his tool belt slipped, and as he fell back, he grabbed a cross-arm and fuse. *Id.* The inmate asserted that he had complained several times that his tool belt had slipped, but his supervisors did not remember such a complaint. *Id.* at 156. This Court held that there was no direct or circumstantial evidence that TDC's failure to replace the tool belt was the proximate cause of the inmate's injuries and reversed the judgment for the inmate. *Id.* at 157–58.

The Fort Worth Court of Appeals dealt with a similar issue involving a railing in *Hopper v. J.C. Penney Co.,* 371 S.W.2d 750 (Tex.App.—Fort Worth 1963, writ ref'd n.r.e.). In *Hopper,* the plaintiff, a shopper at J.C. Penney's, fell on stairs at the store, suffered personal injuries, and sued the store for damages. *Id.* at 751. The plaintiff admitted she did not know what caused her fall, and her companion did not see the accident occur. *Id.* at 752. The Fort Worth Court of Appeals reasoned:

> In other words, we are left to speculate whether her hand failed to reach the handrail toward which she was reaching, or grasped the same only to have her hand slip; whether she missed the first step or stepped thereupon only to have her foot slip, her ankle turn, her heel or toe to catch in some obstruction, etc. Therefore plaintiff failed to show any causal connection with the negligence or dereliction in duty on the part of the defendant, if any. The evidence proves only the fact of her accident, not the cause. In such a case a plaintiff cannot be said to have made out a prima facie case.

*Id.* The court found the evidence did not establish proximate cause and affirmed the trial court's directed verdict for J.C. Penney. *Id.* at 751.

■ To infer a fact, we must be able to deduce that fact as a logical consequence from other proven facts. Mrs. Summers argues that because her son did not jump and was not pushed, he must have fallen; if he fell, it was caused by the design of the railing. Therefore, she asserts, she was entitled to ask a jury to decide if the railing caused her son's fall.

Mrs. Summers overlooks the equally plausible deduction that the railing played no role in her son's fall. When circumstances are consistent with either of two facts and nothing shows that one is more probable than the other, neither fact can be inferred. *Litton Indus. Prod., Inc. v. Gammage,* 668 S.W.2d 319, 324 (Tex.1984); *Marshall Field Stores, Inc. v. Gardiner,* 859 S.W.2d 391, 400 (Tex. App.—Houston [1st Dist.] 1993, writ dism'd w.o.j.). Because the circumstances are as consistent with the hotel's theory as Mrs. Summers', and nothing shows one was more probable than the other, Mrs. Summers was not entitled to submit the issue to the jury for it to guess at causation.

■ This is not a case in which some circumstantial evidence points in one direction, and other circumstantial evidence points in the opposite direction. In cases involving conflicting evidence, the jury is the sole arbiter of which evidence should be believed. *See Herbert v. Herbert,* 754 S.W.2d 141, 144 (Tex.1988); *Marshall Field,* 859 S.W.2d at 401.

This is a case in which the circumstantial evidence most favorable to Mrs. Summers' theory of the case is equally susceptible to the conflicting inferences made by the hotel. There is no evidence tending to show that Matthew's fall was caused by the railing. Every piece of circumstantial evidence relied on by Mrs. Summers to infer causation equally supports the inference that Matthew fell from the balcony for some other reason.

■ An ultimate fact may be established by circumstantial evidence, but the circumstances relied upon must have probative force sufficient to constitute a basis of legal inference. *Marshall Field,* 859 S.W.2d at

401. It is not enough that the facts raise a mere surmise or suspicion of the existence of the fact or permit a purely speculative conclusion. *Id.* The circumstances relied on must be of such a character as to be reasonably satisfactory and convincing, and must not be equally consistent with the nonexistence of the ultimate fact. *Id.*

In this case, we find there was no evidence, circumstantial or direct, to show how Matthew got over the balcony railing. Nothing indicates the balcony had anything to do with Matthew's fall and we are left to speculate as to how he fell. We find Mrs. Summers did not present any material fact to show the hotel proximately caused her son's fall.

### Res Ipsa Loquitur

 We note that in her brief, Mrs. Summers asserts the doctrine of res ipsa loquitur. In a reply point, the hotel contends Mrs. Summers waived this point because this was not a ground asserted in her response to the motion for summary judgment. We agree and find Mrs. Summers waived this point. Issues not expressly presented to the trial court by written motion, answer, or other response cannot be considered on appeal as grounds for reversal. TEX.R.CIV.P. 166a(c); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 676 (Tex.1979); *Dickey v. Jansen*, 731 S.W.2d 581, 583 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.).

We overrule point of error one.

### Balcony railing design and product liability

In point of error two, Mrs. Summers asserts the trial court erred in granting the hotel's motion for summary judgment by finding that the design of the balcony was not unreasonably dangerous as a matter of law because it complied with all applicable standards. In point of error three, Mrs. Summers asserts that the trial court erred in granting the hotel's motion for summary judgment by holding that a warning was not necessary as a matter of law. We analyze these points of error together as a products liability claim because Mrs. Summers cites

products liability cases in these points of error.

 Products liability is an area of tort law that permits recovery for personal injury or property damage that results from the use of a product manufactured, sold, or distributed by the defendant. *See* Products Liability, 72 C.J.S. Supp. § 2–3. A fundamental principle of the law of products liability is that the plaintiff must prove that the defendants supplied the product that caused the injury. *Gaulding v. Celotex Corp.*, 772 S.W.2d 66, 68 (Tex.1989). In this case, the hotel did not sell or manufacture the balcony railing and is not liable under a products liability action as a matter of law. We overrule points of error two and three.

### Premises liability

In point of error four, Mrs. Summers contends the trial court erred in granting the hotel's motion for summary judgment on the issue of notice. In point of error five, Mrs. Summers argues that the trial court erred in granting the hotel's motion for summary judgment because there was a question of fact about Matthew's status and the duty owed him. We address these points together.

Mrs. Summers contends the hotel did have notice of the condition of the balcony even though there were no previous incidents or claims involving the railing. Mrs. Summers asserts the hotel was aware of the large diameter of the railing and that it was difficult for someone to grasp it.

The hotel contends that summary judgment was proper because Mrs. Summers did not raise an issue of fact in response to its evidence regarding notice. The hotel contends that its expert, James Davis, an architect, testified that the railing was typical of that used in the industry for the applicable design environment, and was not unreasonably dangerous considering the height, diameter, and design. In this situation, the hotel contends, the danger of falling off a balcony is well known and there is no duty to warn. The hotel argues that the railing itself is a sufficient warning of the danger.

The standard of conduct required of a premises occupier toward his invitees is the ordinary care that a reasonably prudent person would exercise under all pertinent circumstances. *Joachimi v. City of Houston,* 712 S.W.2d 861, 864 (Tex.App.—Houston [1st Dist.] 1986, no writ). The occupier's liability to an invitee depends on whether he acted reasonably in light of what he knew or should have known about the risks accompanying a premise condition. *Id.* The Texas Supreme Court has held:

> [W]hen an occupier has actual or constructive knowledge of any condition on the premises that poses an unreasonable risk of harm to invitees, he has a duty to take whatever action is reasonably prudent under the circumstances to reduce or to eliminate the unreasonable risk from that condition. The occupier is considered to have constructive knowledge of any premises defects or other dangerous conditions that a reasonably careful inspection would reveal.

*Corbin v. Safeway Stores, Inc.,* 648 S.W.2d 292, 295 (Tex.1983).

The Supreme Court also stated that if there are dangers that are open and obvious of which an invitee knows or of which it is charged with knowledge, then the occupier owes the invitee no duty to warn or to protect the invitee. *Halepeska v. Callihan Interests, Inc.,* 371 S.W.2d 368, 378 (Tex. 1963). When there is no duty to warn a person of things he already knows, or of dangerous conditions or activities that are so open and obvious, as a matter of law he will be charged with knowledge and appreciation thereof. *Id.* In this case, the fact that a person can fall from an eighth story balcony is an open and obvious condition that we find Matthew knew. Even Mrs. Summers stated in her deposition that her son would know he would fall if he went over a balcony railing.

We overrule points of error four and five, and affirm the summary judgment granted for the hotel.