**TRUCK INSURANCE EXCHANGE,**
Appellant,

v.

**Steven CHALFANT, Appellee.**

No. 01–05–00546–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

April 13, 2006.

Kenneth R. Chambers, Chambers, Templeton, Cashiola & Thomas, LLP, Houston, TX, for Appellant.

Paul B. Rosen, Law Office of Paul B. Rosen, Bellaire, TX, for Appellee.

Panel consists of Justices NUCHIA, KEYES, and HANKS.

## OPINION

GEORGE C. HANKS, JR., Justice.

This is an interlocutory appeal from the trial court's denial of Truck Insurance Exchange's motion for summary judgment.[1] In this case, we must determine whether the Business Auto Policy ("the policy") that Truck Insurance Exchange (TIE) issued to Construction Coordinator Inc., a corporation of which Steven Chalfant is president, provides uninsured/underinsured motorist ("UM/UIM") coverage for Chalfant's accident, which occurred while he occupied his personal auto. We con-

---

1. Texas Civil Practice and Remedies Code section 51.014(d) provides that

 (d) A district court may issue a written order for interlocutory appeal in a civil action not otherwise appealable under this section if:

 (1) the parties agree that the order involves a controlling question of law as to which there is a substantial ground for difference of opinion;

 (2) an immediate appeal from the order may materially advance the ultimate termination of the litigation; and

 (3) the parties agree to the order.

 TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(d) (Vernon Supp.2005).

clude that it does not. Accordingly, we reverse the order of the trial court.

## Background

Chalfant was injured while driving his personal automobile—a 1994 Infiniti J30. The accident occurred during the effective period of the policy issued to Construction Coordinator Inc. by TIE. The following facts are undisputed:

- TIE issued a Business Auto Policy of insurance to Construction Coordinator Inc.;
- The policy was in full force and effect at the time of the occurrence;
- Chalfant was employed as president of the insured, Construction Coordinator Inc.;
- The policy provided, by endorsement, for UM/UIM coverage for which a premium was paid;
- The policy provided coverage for any person designated on the policy or any other person occupying a covered automobile;
- Chalfant was not a "designated person" on the policy;
- The only auto specifically identified on the policy was a 1999 GMC Yukon; and
- Chalfant was driving his personal automobile, a 1994 Infiniti J30, at the time of the accident.

Chalfant sued Mid Century Insurance Company[2] and TIE for breach of contract in an attempt to recover UM benefits under his policy for an accident that occurred while he was driving his personal auto.[3] In his second amended petition, Chalfant stated that he "was a covered person [under the TIE policy] by virtue of his position/employment as President of Construction Coordinator Inc." Chalfant further asserted that, "as a matter of law the liability insurance for both specifically described autos and **non-owned** autos is equally applicable for uninsurance/underinsurance coverage." Alternatively, he alleged that TIE's "selections, symbols and references as contained on the Certificate/Declaration and uninsured/underinsured endorsement creates an ambiguity of the terms of the insurance agreements as a matter of law."

By motion for summary judgment, TIE sought a declaratory judgment on the coverage issue. Chalfant responded that his "personal vehicle while utilized in business is a **'covered vehicle'** as a matter of law." In an affidavit attached to his response, Chalfant testified that "[a]t the time of the automobile collision I was utilizing the Infiniti J 30 motor vehicle in furtherance of the business and/or personal affairs of Construction Coordinators, Inc., the named insured under the policy of insurance." Chalfant further testified that "I did not reject uninsured/underinsured coverage. In fact, I requested that uninsured/underinsured coverage be retained."

The trial court denied TIE's summary judgment in favor of Chalfant, finding that Chalfant was entitled to coverage under the policy's UM/UIM provision. We must determine the scope of coverage the UM/UIM endorsement provides and whether the endorsement is ambiguous such that a

---

2. According to its second amended original answer, Mid Century has paid Chalfant its $100,000 policy limits in full satisfaction of his UM claim under his personal auto policy. Mid Century is a party in the trial court, but not on appeal.

3. The UM/UIM insurance endorsement of the Business Auto Policy states, "We will pay damages which an **insured** is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of **bodily injury** sustained by an **insured,** or **property damage** caused by an **accident.**"

reasonable interpretation of the policy provides Chalfant coverage.

## Summary Judgment

Because the propriety of a summary judgment is a question of law, we review the trial court's summary judgment decision de novo. *Joe v. Two Thirty Nine Joint Venture,* 145 S.W.3d 150, 156 (Tex. 2004). To prevail on a summary judgment motion, a movant has the burden of proving that it is entitled to judgment as a matter of law and that there is no genuine issue of material fact. Tex.R. Civ. P. 166a(c); *Black v. Victoria Lloyds Ins. Co.,* 797 S.W.2d 20, 23 (Tex.1990); *Farah v. Mafrige & Kormanik, P.C.,* 927 S.W.2d 663, 670 (Tex.App.-Houston [1st Dist.] 1996, no writ). In deciding whether there is a disputed material fact issue precluding summary judgment, proof favorable to the non-movant is taken as true, and the court must indulge every reasonable inference and resolve any doubts in favor of the non-movant. *Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995); *Lawson v. B Four Corp.,* 888 S.W.2d 31, 33–34 (Tex.App.-Houston [1st Dist.] 1994, writ denied). We may affirm a summary judgment only when the record shows that a movant has disproved at least one element of each of the plaintiff's claims or has established all of the elements of an affirmative defense as to each claim. *Am. Tobacco Co., Inc. v. Grinnell,* 951 S.W.2d 420, 425 (Tex.1997); *Farah,* 927 S.W.2d at 670. If the movant establishes a right to summary judgment, the burden shifts to the non-movant to present evidence raising a fact issue. *Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex.1995).

 We note, moreover, that a summary judgment must stand or fall on the grounds expressly presented in the motion. *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 339–41 (Tex.1993).

When a summary judgment does not specify the grounds on which the trial court denied it, the reviewing court will affirm the judgment if no theory included in the motion is meritorious. *See Browning v. Prostok,* 165 S.W.3d 336, 344 (Tex.2005); *Summers v. Fort Crockett Hotel, Ltd.,* 902 S.W.2d 20, 25 (Tex.App.-Houston [1st Dist.] 1995, writ denied).

## Business Auto Policy

In issues one and two, TIE argues that the policy is unambiguous and provided no coverage to Chalfant for the accident in question, which occurred while Chalfant was occupying his personal auto.

### Ambiguity

 The general rules of contract construction govern insurance policy interpretation. *State Farm Life Ins. Co. v. Beaston,* 907 S.W.2d 430, 433 (Tex.1995). "Whether a contract is ambiguous is a question of law that must be decided by examining the contract as a whole in light of the circumstances present when the contract was entered." *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.,* 940 S.W.2d 587, 589 (Tex.1996). A contract is unambiguous as a matter of law if it can be given a definite or certain legal meaning. *Id.* at 589. Conversely, if an insurance contract is subject to more than one reasonable interpretation, the contract is ambiguous and the interpretation that most favors coverage for the insured will be adopted. *Grain Dealers Mut. Ins. Co. v. McKee,* 943 S.W.2d 455, 458 (Tex.1997). Therefore, we must discern whether there is more than one reasonable interpretation of the UM/UIM endorsement. In making this determination, we note that an ambiguity does not arise simply because the parties advance conflicting interpretations of the contract. *Columbia Gas,* 940 S.W.2d at 589.

## UM/UIM Coverage

■ Here, the UM/UIM endorsement provides three categories of "who is an insured" under the policy:

1. You and any **designated person** and any **family member** of either.
2. Any other person **occupying** a **covered auto.**
3. Any person or organization for damages that person or organization is entitled to recover because of **bodily injury** sustained by a person described in 1. or 2. above.[4]

The insurance policies and the summary judgment evidence demonstrate that the TIE policy excludes coverage for Chalfant. In order for the policy to cover him, Chalfant must fall within one of the categories of "who is an insured."

## Designated Person or Family Member

The Business Auto Coverage Form of the TIE policy provides, "Throughout this policy the words 'you' and 'your' refer to the Named Insured in the Declarations." The declarations page of the TIE policy provides that Construction Coordinator Inc. is the "named insured." Construction Coordinator Inc. is also the "named insured" in the UM/UIM endorsement. The UM/UIM endorsement defines "designated person" as "an individual named in the schedule. By such designation, that person has the same coverage as you." Construction Coordinator Inc. did not name a "designated person" in the space provided in the UM/UIM endorsement.

The name of "Steven Chalfant" does not appear anywhere in the policy or the endorsements. As a result, Chalfant does not qualify as "you" or "designated person" under the endorsements. Additionally, Chalfant does not qualify as a "family member" under the endorsements. "Family member" is defined in the endorsements as "a person related to you [Construction Coordinator Inc.] by blood, marriage, or adoption who is a resident of your [Construction Coordinator Inc.] household, including a ward or foster child." Chalfant is obviously not related to Construction Coordinator Inc. by blood, marriage, or adoption. Of course, he also does not reside in Construction Coordinator Inc.'s household. A corporation simply cannot have a "family" as that term is defined in the policy. *See McKee,* 943 S.W.2d at 457; *Webster v. U.S. Fire Ins. Co.,* 882 S.W.2d 569, 572 (Tex.App.-Houston [1st Dist.] 1994, writ denied). Because he does not qualify as a "designated person," a "family member," or "you," Chalfant does not fall within the first classification of who is an insured under the UM/UIM endorsement.

## Covered Auto

The second classification identifies an insured as "any other person **occupying** a **covered auto.**" The UM/UIM endorsement adds definitions which have "special meaning" for UM/UIM insurance. The endorsement defines "covered auto" as follows:

4. "**Covered auto**" means an **auto:**

a. owned or leased by you or

b. while temporarily used as a substitute for an owned **covered auto** that has been withdrawn from normal use because of its breakdown, repair, servicing, **loss** or destruction.

Liability coverage of this policy must apply to the **covered auto. Covered auto** includes **autos** (described in a. and b. above) for which Uninsured/Underin-

---

4. Chalfant is not attempting to recover as a derivative claimant for any damages because of injuries to another. His claim is based on his own alleged injuries; therefore, category three does not apply.

sured Motorists Insurance has not been rejected in writing.

There is no contention that the Infiniti J30 was being used as a temporary substitute or that the GMC Yukon was broken down. Therefore, part b. of the definition does not apply. As such, to be a "covered auto," the Infiniti J30 would have to be owned or leased by Construction Coordinator Inc., and it was not.

Construction Coordinator Inc. did not list additional autos to be covered under the UM/UIM endorsement. Specifically, the checked box in the "description of covered autos" reflected an intent to cover "any auto designated in the declarations of the policy (by the letters 'UM/UIM') and an auto ownership of which is acquired during the policy by you as a replacement therefor." There were no autos in the declaration of the policy, however, that were designated with the letters "UM/UIM."

Arguably, this creates an ambiguity. Assuming but without deciding that an ambiguity exists, interpreting the policy in favor of the insured, Construction Coordinator Inc., would result in a determination that UM/UIM coverage exists for Construction Coordinator Inc.'s Yukon—the only vehicle identified in the policy.

Chalfant contends that the GMC Yukon is listed in "the section describing the autos Construction Coordinator Inc. actual (sic) **own** not **all covered autos.** Indeed, if [TIE] wanted to limit uninsured/underinsured coverage more so than liability coverage, it could have simply typed the number 7 in the box on the Declaration Page across from uninsured/underinsured."[5]

Chalfant argues that a reasonable interpretation of this allegedly ambiguous policy would provide for UM/UIM coverage of the same autos that are covered by liability insurance—"**both** owned and identified vehicles as well as rental and **non owned vehicles, i.e., vehicles owned by the insured's employees.**" We disagree.

Chalfant contends that, because he was furthering the business or personal affairs of Construction Coordinator Inc. at the time of the accident, he is entitled to coverage. We agree that this status would have afforded Chalfant liability coverage in the event that he had been the negligent party. However, the fact that *liability coverage* would apply to certain non-owned autos is no indication that *UM/UIM coverage* would be provided to the occupants of such non-owned autos.

Where only a corporation is named as an insured and no name is provided as a designated person in the UM/UIM endorsement, the policy has a certain and definite legal meaning which did not include coverage for occupants of a vehicle which was not owned or leased by the corporation.

We sustain issues one and two.

### Written Rejection

In issue three, TIE contends that a written rejection of UM/UIM insurance is not required for non-owned autos.

■ Chalfant argues that, because the liability coverage provision of the policy provides liability coverage not only for those autos owned by Construction Coordinator Inc., but also for hired autos[6] and

**5.** The number seven was defined in the policy to identify "SPECIFICALLY DESCRIBED **AUTOS.** Only those **autos** described in ITEM THREE of the Declarations for which a premium charge is shown (and for Liability Coverage any **trailers** you don't own while at-

tached to any power unit described in ITEM THREE.)"

**6.** A "hired auto" is defined by the policy as "only those autos you lease, hire, rent or borrow. This does not include any auto you

non-owned autos,[7] the policy must also necessarily provide UM/UIM coverage for anyone occupying a non-owned auto, unless the insured previously rejected UM/UIM coverage in writing for each such non-owned auto. Although it is true that written rejections are normally required by article 5.06–1 of the Texas Insurance Code [8] when liability coverage is provided, written rejections are not required for vehicles covered by "hired and non-owned auto liability insurance [which is] distinguished from 'auto liability insurance' as contemplated by article 5, subchapter A of the insurance code." *Taylor v. State Farm Lloyds, Inc.*, 124 S.W.3d 665, 670 (Tex.App.-Austin 2003, pet. denied).

Accordingly, we sustain issue three.

### Conclusion

We reverse the trial court's order denying summary judgment and render judgment that Chalfant take nothing from TIE on his coverage-related claims.

lease, hire, rent or borrow from any of your employees or partners or members of their households."

7. A "non-owned auto" is defined by the policy as "only those autos you do not own, lease, hire, rent or borrow or that are used in connection with your business. This includes all those owned by your employees or partners or members of their households but only while used in your business or your personal affairs."

8. TEX. INS.CODE ANN. art. 5.06–1 (Vernon Supp. 2005).