NO. 07-05-0115-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

JUNE 7, 2006

_____

BARBARA GARRISON, INDIVIDUALLY AND AS ACTING REPRESENTATIVE,
OF THE ESTATE OF JAMES LESTER GARRISON, DECEASED, LESLIE BRYAN
GARRISON, INDIVIDUALLY, AND JO BETH NICHOLS, INDIVIDUALLY, AND
AS SURVIVING CHILDREN OF JAMES LESTER GARRISON, DECEASED,
APPELLANTS

V.

TERESA DAILEY, COVENANT HEALTH SYSTEMS A/K/A COVENANT
MEDICAL CENTER, AND COVENANT HOSPITAL LEVELLAND,
APPELLEES

_____

FROM THE 237TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2003-522,438; HONORABLE SAM MEDINA, JUDGE

_____

Before QUINN, C.J., and REAVIS and CAMPBELL, JJ.

**MEMORANDUM OPINION**

Contending the trial court erred in striking their medical expert, sustaining objections

to their evidence, and rendering summary judgment that they take nothing on their medical

malpractice action against Teresa Dailey and Covenant Health Systems a/k/a Covenant Medical Center and Covenant Hospital Levelland, covered by former article 4590i, Medical Liability and Insurance Improvement Act, Barbara Garrison, individually and as acting Representative of the Estate of James Lester Garrison, deceased, Leslie Bryan Garrison and Jo Beth Nichols, individually and as surviving children of James Lester Garrison, (collectively Garrison), present three issues. These issues question whether the trial court erred in (1) striking their expert, Lige B. Rushing, M.D., because he was qualified as an expert witness, (2) sustaining objections to their evidence in support of their response to the no-evidence motion for summary judgment, and (3) granting the no-evidence motion for summary judgment on the medical negligence issues of standard of care and causation where there was more than a scintilla of evidence in support of the issues. We affirm.

While James Lester Garrison was at his home on March 5, 2001, he sustained a myocardial infarction at which time he stopped breathing. He was taken to Covenant Hospital in Levelland where he was immediately transferred to Covenant Medical Center in Lubbock. Because he had sustained brain damage at the time of his myocardial infarction due to lack of oxygen, a feeding tube (also known as a "PEG tube") was surgically placed into his stomach while he was at Covenant Medical Center in Lubbock. On March 21, 2001, he was transferred to Covenant's rehabilitation unit, and on March 27, he was dismissed to Lynwood Manor Nursing Home, L.L.C. On April 3, 2001, a certified

2

nurse assistant reported that James pulled out his PEG tube while taking a shower.[1] After Dailey, a nurse practitioner employed by Covenant Medical Center was summoned, she replaced the feeding tube with a Foley catheter, following instructions from Dr. Hughes. When the tube was replaced, she commented that she could hear air which indicated that it was properly positioned by auscultation (listening to sounds of the body). Then, near 3:00 p.m., another nurse resumed feeding James through the tube, but about 4:30, Nurse Martinez found him in distress and described him as "shaky with facial grimacing." Nurse Dailey ordered James transferred to the emergency room at Covenant Levelland. While he was in the emergency room, x-rays confirmed the feeding tube was not in the stomach which prompted his immediate transfer to Covenant Hospital in Lubbock. James's condition continued to deteriorate, and he died on April 12, 2001.

By their no-evidence motion for summary judgment pursuant to Rule 166a(i) of the Texas Rules of Civil Procedure, Dailey and Covenant presented six grounds. As material for disposition here, they asserted:

(1) No evidence exists that defendants breached any applicable standard of care as to James Garrison, no evidence that any act or omission of Defendants was a proximate cause of Mr. Garrison's injuries and death, or a proximate cause of any damages claimed by plaintiffs.

(2) No evidence exists that Defendants Covenant Health System a/k/a Covenant Medical Center and Covenant Hospital Levelland were directly negligent in its care and treatment of James Lester Garrison.

[1]According to the records at Lynwood, James frequently pulled on the PEG tube.

Garrison responded with summary judgment evidence and the affidavit of Lige B. Rushing, Jr., M.D., and after granting the motion to strike the summary judgment evidence, the trial court granted the no-evidence motion for summary judgment.

## STANDARD OF REVIEW

No-evidence Summary Judgment

In our determination of whether the no-evidence summary judgment was proper, we apply the standard of review presented in Kimber v Sideris, 8 S.W.3d 672, 675-76 (Tex.App.–Amarillo 1999, no pet.).

## ANALYSIS

We commence our analysis by first considering Garrison's third issue which contends the trial court erred in granting the partial no-evidence motion for summary judgment on the issue of causation because more than a scintilla of evidence exists on the issue of causation. We disagree.

In response to the no-evidence motion for summary judgment, Garrison submitted the oral deposition and affidavit of Lige B. Rushing, Jr., M.D. as "the only causation evidence" and contended fact issues were raised on causation. Garrison contends the opinion of Dr. Rushing demonstrates that Dailey misplaced the PEG tube when she reinserted the tube and such negligence was the proximate cause of the patient's death.

4

In this case, Garrison was required to prove by a preponderance of the evidence that the alleged negligent act or omission was a proximate cause of the harm. In order to be a proximate cause, the negligence must have been a substantial factor in bringing about the harm and without which negligence, the harm would not have occurred. Columbia Medical Center of Las Colinas v. Bush ex rel. Bush, 122 S.W.3d 835, 852 (Tex.App.–Fort Worth 2003, pet. denied); Sisters of St. Joseph of Texas, Inc. v. Cheek, 61 S.W.3d 32, 35 (Tex.App.– Amarillo 2001, pet. denied).

## Reasonable Medical Probability[2]

To constitute evidence of causation, an expert opinion must rest in reasonable medical probability and must not be based on speculation and conjecture. Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 500 (Tex. 1995). *See also* Merrell Dow Pharmaceuticals, Inc. v. Havner, 953 S.W.2d 706, 720 (Tex. 1997) (holding where the failure of an expert to rule out other plausible causes renders his opinion little more than speculation).

Garrison's summary judgment evidence included the deposition of expert, Dr. Rushing. Doctor Rushing's opinion that Dailey did not reinsert the tube into James's stomach was based upon the fact that the x-ray taken several hours later showed that the

---

[2] *See* Parker v. Employers Mutual Liability Ins. Co. of Wis., 440 S.W.2d 43, 46 (Tex. 1969) (discussing the distinction between a reasonable medical "probability" and medical "possibility").

tube was not inside the stomach; however, Dr. Rushing conceded that James likely pulled the tube out during his shower on April 3. Also, the expert testified that he could not rule out the possibility that James pulled on the tube after it was replaced by Dailey, thereby lodging it in the peritoneal cavity. Doctor Rushing concluded that he "can't exclude anything." Because Garrison's medical expert on causation could not rule out other causes of the occurrence, his opinion is little more than speculation. E.I. du Pont de Nemours and Co., Inc. v. Robinson, 923 S.W.2d 549, 559 (Tex. 1995).

Moreover, direct evidence shows (1) the tube was inserted at Covenant before James was transferred to Lynwood, (2) it was found on the floor of the shower where he was taking a shower, (3) nurse Dailey reinserted the tube, and (4) although the tube remained inserted in James's body, an x-ray taken after he returned to the hospital showed the tube was not in his stomach but was in the body cavity. According to Dr. Rushing, James developed peritonitis as a result of the dislocation of the tube which made it more difficult for him to survive. Garrison's claim is based on the contention that nurse Dailey negligently inserted the tube into James's body cavity, not his stomach. However, there is no direct summary judgment evidence that Dailey did not insert the tube into James's body.[3]

---

[3]Direct evidence is provided by witnesses who saw the acts done or heard the words spoken, while circumstantial evidence is proof of collateral facts and circumstances from which the trier of fact arrives at the conclusion that the main facts sought to be established in fact existed. In re S.S.G., 153 S.W.3d 479, 483 (Tex.App.–Amarillo 2004, pet. denied).

This case is somewhat similar to the proof of causation problem presented in Roth v. FFP Operating Partners, 994 S.W.2d 190, 197 (Tex.App.–Amarillo 1999, pet. denied), wherein direct evidence of the cause of the accident was limited because the sole survivor of the accident was unable to testify. Although cause-in-fact may be proved by circumstantial evidence, we held that a vital fact essential to establishing legal elements for recovery may not be established by "piling inference upon inference." *Id.* Also, as there noted, when circumstances are consistent with either of two facts and nothing shows that one is more probable than the other, neither fact can be inferred. *See id.*; U.S. Currency v. State, 730 S.W.2d 659, 662 (Tex. 1984).

In addition to *Roth*, Summers v. Fort Crockett Hotel, Ltd., 902 S.W.2d 20 (Tex. App.–Houston [1st Dist.] 1995, writ denied), is analogous to the proof problems presented here. In *Summers*, the plaintiff was injured when he fell from a hotel balcony, and he was unable to testify or provide summary judgment evidence as to why he fell. *Id.* In affirming summary judgment for the hotel, the court held:

> [a]n ultimate fact may be established by circumstantial evidence, but the circumstances relied upon must have probative force sufficient to constitute a basis of legal inference. It is not enough that the facts raise a mere surmise or suspicion of the existence of the fact or permit a purely speculative conclusion. The circumstances relied on must be of such a character as to be reasonably satisfactory and convincing , and must not be equally consistent with the nonexistence of the ultimate fact.

7

Here, Garrison contends that the x-rays taken after James was examined at the hospital, constitute evidence that Dailey did not insert the tube into James's stomach. However, the mere occurrence of an event does not constitute evidence of negligence, and negligence is never presumed but must be shown by evidence. Allsup's Convenience Stores v. Warren, 934 S.W.2d 433, 436 (Tex.App.–Amarillo 1996, pet. denied). Instead, it could be reasonably inferred that James attempted to remove the tube from his body a second time or that it became dislodged as a result of body movement or tossing and turning in bed. Expert opinions must be supported by facts in summary judgment evidence, not conjecture. Marathon Corp. v. Pitzner, 106 S.W.3d 724, 729 (Tex. 2003). On the record here, the circumstances could "give rise to any number of inferences, none more probable than another." See Burroughs Wellcome, 907 S.W.2d at 500. Based on the direct evidence, it is apparent that nothing may be inferred because of the conflicting inferences which can be drawn from the limited history and direct evidence.

Accordingly, we conclude the trial court did not error in granting the no-evidence motion for summary judgment because the summary judgment evidence failed to present a question of fact on the issue of causation. Garrison's third issue is overruled. Our disposition of this issue pretermits our consideration of Garrison's first and second issues.

Accordingly, the trial court's judgment is affirmed.

Don H. Reavis
Justice

8