Opinion issued August 31, 2005
 
 
 
 
 
 
 
 
 
 
 
 
 
 
In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-03-01281-CV
____________
 
MARJORIE MARIE HALL, Appellant
 
V.
 
SONIC DRIVE-IN OF ANGLETON, INC., AND MICHAEL CANTRELL,
Appellees
 

 
 
On Appeal from the 149th District Court
Brazoria County, Texas
Trial Court Cause No. 20414*RM02
 



O P I N I O N
          Appellant, Majorie Marie Hall, challenges the trial court’s rendition of
summary judgment in favor of appellees, Sonic Drive-In of Angleton, Inc. (“Sonic”)



and Michael Cantrell, in Hall’s suit for premises liability, assault, and intentional
infliction of emotional distress. In three issues, Hall contends that the trial court erred
in granting summary judgment on her (1) premises liability claim “in the face of
evidence creating fact issues as to each element of her claim,” (2) assault claim based
on the absence of an “inten[t] to injure,” and (3) intentional infliction of emotional
distress claim as Sonic and Cantrell failed to move for summary judgment on that
claim. 
          We reverse and remand.
Factual and Procedural Background
          In her second amended petition, Hall alleged that, on February 28, 2001, while
working as a shift supervisor at a Sonic Drive-In in Angleton, her hand was injured
when she picked up a metal freezer cover that was lying on the floor in the middle of
a walkway. The freezer cover was usually on the freezer, but Cantrell, Sonic’s
manager, had removed the cover and had placed it on a table while repairing the
freezer. Before Cantrell completed the repair, Brenda Ashworth, another Sonic
employee, removed the cover from the table top and leaned it against one of the
table’s legs. Hall then found the cover lying on the floor, and she attempted to pick
it up; however, the edge of the freezer cover, which was “razor sharp,” sliced open
her hand below her thumb, causing her to lose the use of her right hand.
          Hall further alleged that, on April 24, 2002, after she returned to work, 
Cantrell grabbed her right wrist and tried to force her to hold a french-fry scooper in
her right hand. As he was forcing the scooper into her hand, Cantrell told her that
“[i]t don’t take a rocket scientist to scoop no damn fries. You don’t even have to use
your thumb.” When Hall protested that Cantrell was hurting her, he belittled her for
not being able to perform her work and said, “This is pathetic.” 
          Sonic and Cantrell jointly filed a summary judgment motion. Sonic asserted
that it was entitled to judgment as a matter of law on Hall’s premises liability claim
because (1) Sonic did not have actual or constructive knowledge that the metal
freezer cover was on the floor; (2) the cover itself did not pose an unreasonable risk
of harm; (3) Sonic exercised reasonable care to reduce or eliminate any alleged risk;
and (4) Sonic did not proximately cause Hall’s hand injury. Sonic and Cantrell also
asserted that they were entitled to judgment as a matter of law on Hall’s assault claim
because Cantrell “did not touch [Hall] with the intent to cause her injury,” his “only
intention was to encourage [Hall] to use her thumb and hand and to assist in her
rehabilitation,” and, given their friendly relationship, he had “no knowledge or reason
to believe that [Hall] would find his conduct offensive or provocative.” Finally,
although Sonic and Cantrell did not expressly address Hall’s intentional infliction of
emotional distress claim in their summary judgment motion, they contend on appeal
that, because the motion addressed Hall’s assault claim, it encompassed Hall’s
intentional infliction of emotional distress claim.
          In support of their motion, Sonic and Cantrell attached the affidavits of Cantrell
and Ashworth and portions of Hall’s oral deposition testimony. In his affidavit,
Cantrell testified that, on February 28, 2001, while Hall was breading onion rings in
the “food prep area,” he was performing maintenance on one of the refrigerator’s
cooling units. Hall, Ashworth, and Cantrell were the only persons in the kitchen area
that morning. The cooling unit was located behind a removable metal cover, “which
is made of light-weight metal and is approximately two-feet long and one-foot high.” 
Cantrell explained that, in order to remove the freezer cover, a person “must grasp it
firmly by the edges with both hands and slide the cover upward above one’s head.” 
That morning, Cantrell removed the cover with his bare hands and placed it on a table
in the food preparation area. A few minutes later, a disturbance occurred outside the
restaurant, prompting Cantrell to leave the restaurant. However, before departing,
Cantrell told both Hall and Ashworth not to touch the freezer cover because he did
not want the cover to be damaged. Cantrell explained that he had removed the cover
on previous occasions and that, when he had handled the cover, including the
morning when Hall injured her hand, he had “never noticed any sharp edges or
noticed anything that would indicate that a person could be cut by lifting the cover
or handling the cover in any fashion.” He noted that, other than Hall, no one had ever
been cut when handling the freezer cover. 
          Cantrell further testified that he had been a manager at Sonic, had worked with
Hall for about 14 years, and, during that time, had a “good, friendly relationship” with
Hall. After Hall suffered her injury, he explained that one of Hall’s nurses told him
that Hall “needed to use her thumb while at work for her thumb to fully recover.” 
Based on his observations of Hall after her return to work, Cantrell believed that Hall
had been “reluctant to use her right hand at all.” He explained that, when he “handed
Hall the fry scoop,” his “only intention was to encourage [Hall] to use her thumb and
hand and to assist her in her rehabilitation.” He stated that he “did not touch [Hall]
with the intent to cause her injury” and “had no knowledge and no reason to believe
that [Hall] would find [his] conduct offensive.”
          In her affidavit, Ashworth testified that, while Hall was breading onion rings
in the food preparation area, Ashworth was in the kitchen, about 10 feet away,
preparing food for customers. A few minutes after Cantrell left the restaurant,
Ashworth wanted to slice tomatoes on the table upon which Cantrell placed the cover. 
Ashworth, with her “bare hands,” picked up the freezer cover, “held it in one hand by
the end, and leaned it up against the leg of the table.” Ashworth told Hall that she
had leaned the cover against the table leg and not to touch the cover. A moment later,
when a customer placed an order, Ashworth turned around and, with her back to Hall,
went into the kitchen to prepare the order. “A minute or two” after Ashworth leaned
the cover against the table leg, she turned toward Hall and saw her holding the end
of the cover in her right hand. Hall, who was alone in the preparation area, was
holding the same part of the cover that Ashworth had held when Ashworth had picked
up the cover earlier. 
          In the excerpts of Hall’s oral deposition testimony attached to Sonic’s motion,
Hall testified that, at the time of her injury, Hall had been a Sonic employee for more
than 25 years and held the position of “crew chief” or “supervisor.” Hall explained
that part of her duties as a supervisor involved training new employees about Sonic’s
safety policies. One of the safety policies that Hall had taught to new employees was
that an employee should seek assistance if he comes upon a potentially dangerous
tool or sharp object before attempting to pick it up. Hall also testified that she and
Cantrell had worked together for about 14 years and had a “good relationship.” Hall
also stated that when Cantrell touched her on April 24, 2002, he wanted to “show
[Hall that she] did not have to use [her] thumb to scoop fries.” 
          In her response to Sonic’s and Cantrell’s summary judgment motion, Hall
contended that Sonic had not conclusively disproved any of the elements of her
premises liability claim because material fact issues existed as to each of the
elements. Hall also asserted that Sonic and Cantrell had not conclusively disproved
the elements of her assault claim and failed to move for summary judgment on her 
intentional infliction of emotional distress claim. To controvert Sonic’s summary
judgment motion, Hall attached to her response her own oral deposition testimony as
well as the oral deposition testimony of both Cantrell and Ashworth. 
          In the excerpts of Cantrell’s oral deposition testimony, Cantrell testified that
he had removed the cover from the freezer and placed it on a nearby table in the
preparation area in order to let the ice on the cooling unit defrost. He explained that
the cover was a piece of sheet metal, approximately two feet by three feet in size. The
cover was “U-shaped,” with edges approximately two inches wide. Cantrell
explained that it took approximately one to two seconds to remove the cover from the
freezer and that he could have replaced the cover in the same amount of time. 
However, before Cantrell replaced the freezer cover on the day in question, he was
called away from the restaurant to chase after a bread truck that had just collided with
the restaurant’s outdoor canopy. Cantrell told both Ashworth and Hall that he was
leaving but that he would be right back and that they should not touch the freezer
cover because he did not want the cover to fall to the floor. Cantrell noted that prior
to Hall’s injury, she had sprayed water on the preparation tables to clean them and
that he did not “think [the cover] would have cut her if she hadn’t sprayed water and
everything all over it, to where it would have slipped out of her hand, you know,
because, when she sprayed, she sprayed onion ring batter and everything all—you
know, everywhere.” Cantrell conceded that Hall’s injury would not have occurred
if he had replaced the freezer cover prior to leaving the building to chase after the
bread truck driver. 
          In her deposition, Ashworth testified that, although she heard Cantrell tell them
to leave the cover alone when he left the restaurant, Ashworth lifted the freezer cover
from the table top with her bare hands and leaned it against the table leg so that she
could slice tomatoes on the table. Ashworth then told Hall not to touch the cover. 
When Ashworth left to prepare an order in the kitchen, Ashworth did see Hall reach
down toward where Ashworth had placed the cover, but Ashworth then turned away
and had her back to Hall. Ashworth also explained that Ashworth had caused Hall’s
injury by disregarding Cantrell’s orders and leaning the freezer cover against the table
leg. In their depositions, both Cantrell and Ashworth testified that Sonic had a policy
that required employees to pick up stray objects from the floor and to put objects
away after the employees were finished with them. 
          In her own deposition testimony, Hall testified that she was injured when she
picked up the freezer cover that was laying in a pathway on the floor. As she picked
up the freezer cover, the cover’s “sharp” edge sliced her hand open just below her
thumb. As a result of this injury, Hall underwent emergency surgery and lost the use
of her right hand. Hall noted that Cantrell did not give her any warnings about the
freezer cover before he left the restaurant. Hall explained that she picked up the
cover because she wanted to make sure the area was clean and that she was following
Sonic’s safety policy by removing the freezer cover from the floor path. She noted
that, although the cover, as a whole, was not “sharp,” the rims around the cover were
sharp. Additionally, Hall denied spraying water on the table that morning.
          Without specifying the grounds upon which it relied, the trial court granted
Sonic’s and Cantrell’s summary judgment motion on all of Hall’s claims. Hall timely
moved for a new trial, which was denied. 
Standard of Review
            Because the propriety of a summary judgment is a question of law, we review
the trial court’s summary judgment decision de novo. Joe v. Two Thirty Nine Joint
Venture, 145 S.W.3d 150, 156–57 (Tex. 2004). To prevail on a summary judgment
motion, a movant has the burden of proving that it is entitled to judgment as a matter
of law and that there is no genuine issue of material fact. Tex. R. Civ. P. 166a(c);
Black v. Victoria Lloyds Ins. Co., 797 S.W.2d 20, 23 (Tex. 1990); Farah v. Mafrige
& Kormanik, P.C., 927 S.W.2d 663, 670 (Tex. App.—Houston [1st Dist.] 1996, no
writ). In deciding whether there is a disputed material fact issue precluding summary
judgment, proof favorable to the non-movant is taken as true, and the court must
indulge every reasonable inference and resolve any doubts in favor of the non-movant. Randall’s Food Mkts., Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995);
Nixon v. Mr. Prop. Mgmt Co., 690 S.W.2d 546, 548–49 (Tex. 1985); Lawson v. B
Four Corp., 888 S.W.2d 31, 33–34 (Tex. App.—Houston [1st Dist.] 1994, writ
denied). We may affirm a summary judgment only when the record shows that a
movant has conclusively disproved at least one element of each of the plaintiff’s
claims or has conclusively established all of the elements of an affirmative defense
as to each claim. Am. Tobacco Co., Inc. v. Grinnell, 951 S.W.2d 420, 425 (Tex.
1997); Farah, 927 S.W.2d at 670. A matter is conclusively established if ordinary
minds could not differ as to the conclusion to be drawn from the evidence. Triton Oil
& Gas Corp. v. Marine Contractors & Supply, Inc., 644 S.W.2d 443, 446 (Tex.
1982). If the movant establishes a right to summary judgment, the burden shifts to
the non-movant to present evidence raising a fact issue. Centeq Realty, Inc. v.
Siegler, 899 S.W.2d 195, 197 (Tex. 1995). 
          A summary judgment must stand or fall on the grounds expressly presented in
the motion. McConnell v. Southside Indep. Sch. Dist., 858 S.W.2d 337, 339–41 (Tex.
1993). When a summary judgment does not specify the grounds on which the trial
court granted it, the reviewing court will affirm the judgment if any theory included
in the motion is meritorious. Browning v. Prostok, 165 S.W.3d 336, 344 (Tex. 2005);
Summers v. Fort Crockett Hotel, Ltd., 902 S.W.2d 20, 25 (Tex. App.—Houston [1st
Dist.] 1995, writ denied).
Premises Liability
          In her first issue, Hall argues that the trial court erred in granting summary
judgment on her premises liability claim because the summary judgment evidence
established material issues of fact as to each element of her claim. Sonic contends
that the same evidence conclusively disproves each element of her claim.
          In a premises liability case, the duty owed to the plaintiff depends on the
plaintiff’s status at the time of the incident. M.O. Dental Lab v. Rape, 139 S.W.3d
671, 675 (Tex. 2004). Here, the parties do not dispute that Hall, as Sonic’s employee,
was an invitee when the incident in question occurred. See, e.g., Motel 6 G.P., Inc.
v. Lopez, 929 S.W.2d 1, 3 (Tex. 1996). Thus, Sonic owed Hall a duty to exercise
reasonable care to protect her from conditions on the property that created an
unreasonable risk of harm of which Sonic knew or should have known by the exercise
of reasonable care. CMH Homes, Inc. v. Daenen, 15 S.W.3d 97, 101 (Tex. 2000);
H.E. Butt Grocery Co. v. Resendez, 988 S.W.2d 218, 219 (Tex. 1999). This duty,
however, neither made Sonic an insurer of Hall’s safety, nor did it make Sonic strictly
liable for her injuries. Wal-Mart Stores, Inc. v. Gonzalez, 968 S.W.2d 934, 936 (Tex.
1998).
          The general elements of an invitee’s premises liability claim in which it is
alleged that a dangerous condition is known to or discoverable by a possessor of land
are well established. To prevail on such a claim, a plaintiff must prove that (1) the
possessor had actual or constructive knowledge of some condition on the premises,
(2) that posed an unreasonable risk of harm, (3) that the possessor failed to exercise
reasonable care to reduce or eliminate the risk, and (4) the possessor’s failure to use
such care proximately caused the plaintiff’s injuries. Motel 6 G.P., 929 S.W.2d at 3;
Restatement (Second) of Torts § 343 (1965). Because Sonic asserts that the
summary judgment evidence “conclusively disproves at least one essential element”
of Hall’s claim, we address each element in turn. 
Actual Knowledge
          The threshold issue in a premises defect claim is whether the defendant had
actual or constructive notice of the allegedly dangerous condition. Motel 6 G.P., Inc.,
929 S.W.2d at 3. Generally, a plaintiff may satisfy the notice element by establishing
that (1) the defendant placed an object or substance on the floor, (2) the defendant
actually knew that an object or a substance was on the floor, or (3) that the object or
substance was on the floor so long that it should have been discovered and removed
by the defendant in the exercise of ordinary care. See Keetch v. Kroger Co., 845
S.W.2d 262, 265 (Tex. 1992). Actual knowledge is what a person actually knows as
distinguished from constructive or imputed knowledge; that is, what a person after
a reasonable inspection ought to know or have reason to know. Motel 6 G.P., 929
S.W.2d at 3–4. Here, although Sonic argued in its summary judgment motion that
it conclusively established that it had neither actual nor constructive knowledge of the
alleged defect, on appeal, Hall argues that, because Sonic’s employees created the
dangerous condition, Sonic had actual knowledge of the condition.
          Citing Taylor v. Albertsons, Inc., 814 S.W.2d 83, 85 (Tex. App.—Corpus
Christi 1991, writ denied) and Price Constr., Inc. v. Castillo, 147 S.W.3d 431 (Tex.
App.—San Antonio 2004, no pet. h.), Sonic argues that it conclusively established
that it did not have actual knowledge of any dangerous condition because “only [Hall]
knew the covering was on the floor.” Sonic asserts that the Taylor court “held that
the defendant did not have actual knowledge that a stick of butter was on the floor,
because there was no evidence that the defendant knew that it was on the floor until
the plaintiff actually slipped and fell.” However, the court in Taylor was specifically
addressing the plaintiff’s appeal from a take-nothing judgment entered after the jury
found that the defendant did not know, nor should it have known, that there was a
stick of butter on the floor. 814 S.W.2d at 85. In concluding that the jury’s finding
was not “against the great weight and preponderance of the evidence,” the court noted
that the jury simply rejected the plaintiff’s theory about how the stick of butter ended
up on the floor and that this determination was properly within the province of the
jury. Id. at 86. Taylor does not support Sonic’s contention that it disproved actual
knowledge of the condition as a matter of law.
          Relying on Castillo, Sonic concludes that Hall “cannot show that Sonic had
actual knowledge of the alleged dangerous condition by showing that Sonic had
actual knowledge that the cover was on the table or leaning against the table leg.” 
Sonic’s conclusion is erroneous. In Castillo, the court held that the plaintiff’s
evidence was legally insufficient to support the jury’s finding that the defendant had
actual knowledge of an unreasonably dangerous condition at an automobile accident
site. 147 S.W.3d at 437. In reaching its holding, the court emphasized that, although
the plaintiff introduced evidence of numerous reports outlining certain deficiencies
in the 2.25-mile stretch of highway constructed by the defendant, none of the reports
dealt specifically with the plaintiff’s alleged defects or the portion of the highway
where the accident actually occurred. Id. In the instant case, however, we are not
dealing with the legal sufficiency of reports about unobvious defects, but rather
whether the summary judgment evidence in this case raised a fact issue as to whether
Sonic had actual knowledge of the allegedly dangerous condition created by
Ashworth’s placement of the thin metal cover against a table leg on the floor. 
          It is well settled that “[t]he fact that the owner or occupier of a premises created
a condition that posed an unreasonable risk of harm may support an inference of
knowledge.” Keetch, 845 S.W.2d at 265. Given such an inference, it is up to the fact
finder to determine whether the owner or occupier knew or should have known of the
condition. Id. Such an inference cannot be made as a matter of law unless knowledge
is uncontroverted. Id. 
          Hall asserts that “the dangerous condition at issue was the leaving of the
freezer cover in an exposed, dangerous and unstable position where it was foreseeable
that it would fall to the floor.” In his affidavit, Cantrell stated that he placed the
freezer cover on the table and that the cover was still on the table when he left to
chase after the bread truck driver. Ashworth testified that she removed the cover
from the table and leaned it against the table leg on the floor. Thus, the evidence
shows that Ashworth, a Sonic employee, knew the freezer cover was on the floor
because she actually placed it on the floor, albeit against the leg of the table. 
Moreover, the evidence shows that Hall, another Sonic employee, actually saw the
cover lying on the floor before she picked up the cover and injured herself. 
Accordingly, we hold that the summary judgment evidence did not conclusively
establish that Sonic did not have actual knowledge of the condition.     
Unreasonable Risk of Harm 
          A condition poses an unreasonable risk of harm for premises-defect purposes
when there is a “sufficient probability of a harmful event occurring that a reasonably
prudent person would have foreseen it or some similar event as likely to happen.” 
County of Cameron v. Brown, 80 S.W.3d 549, 556 (Tex. 2002). Foreseeability in this
context “does not require that the exact sequence of events that produced an injury
be foreseeable.” Id. Instead, only the general damage must be foreseeable. Id. 
          Sonic asserts that the summary judgment evidence conclusively established that
the freezer cover did not pose an unreasonable risk of harm essentially because
Cantrell and Ashworth handled it “without injury” and neither they nor Hall ever
“knew the covering to cause injury.” Although evidence of other injuries attributable
to the same condition “would be probative,” such evidence would not be “conclusive”
on the question of whether the condition posed an unreasonable risk of harm. See
Seideneck v. Cal Bayreuther Assocs., 451 S.W.2d 752, 754 (Tex. 1970). Likewise,
although evidence of the lack of any injuries attributable to the condition might be
probative on the issue, it does not follow that such evidence conclusively establishes
the absence of an unreasonable risk of harm.
          The determination of whether a particular condition poses an unreasonable risk
of harm is generally fact specific. As emphasized by the Austin Court of Appeals: 
It is important to note that reasonableness determinations such as the
one here are fact-intensive inquiries and, as such, are issues well-suited
for a jury’s determination. Indeed, as the Texas Supreme Court
commented in one of the cases cited by appellant, there is no definitive,
objective test that may be applied to determine whether a specific
condition presents an unreasonable risk of harm. 
Reliable Consultants, Inc. v. Jaquez, 25 S.W.3d 336, 342 (Tex. App.—Austin 2000,
pet. denied) (citing Seideneck, 451 S.W.2d at 754). 
          Here, we note that Hall testified in her deposition that the freezer cover’s “razor
sharp edge” sliced her hand open below her thumb and that, as a result, she
underwent emergency surgery and lost the use of her right hand. Hall also produced
Cantrell’s deposition testimony in which he stated that he had removed the cover on
three or four occasions in the four years preceding Hall’s accident and that he had not
inspected the cover for a dangerous condition prior to laying it on the table. 
Moreover, Ashworth testified in her affidavit that she removed the freezer cover from
the table and leaned it against the table leg on the floor. It would not be a stretch for
a reasonable fact finder to conclude that a very thin metal cover could easily slide or
fall from such a position. 
          The exact sequence of events that produced Hall’s injury were disputed. After
taking the proof favorable to Hall as true, and indulging every reasonable inference
and resolving any doubts in favor of Hall, as we must, we conclude that Hall raised
a genuine issue of fact regarding whether the placement of the freezer cover against
the table leg on the floor posed an unreasonable risk of harm. Also, we note that,
although Sonic asserts that it “conclusively established that the covering did not pose
an unreasonable risk of harm,” Hall argued that the rims around the cover were “razor
sharp.” Accordingly, we hold that the summary judgment evidence did not
conclusively establish that the placement of the freezer cover did not pose an
unreasonable risk of harm.
Failure to Exercise Reasonable Care
          Hall asserts that the summary judgment evidence raised a fact issue as to
whether Sonic failed to exercise reasonable care to reduce or eliminate any
unreasonable risk of harm posed by the placement of the freezer cover. Sonic argues
that, because Cantrell and Ashworth separately and specifically instructed Hall not
to touch the freezer cover, it conclusively established that it exercised reasonable care
to reduce or eliminate the alleged risk. 
          Cantrell did state in his affidavit that he told both Ashworth and Hall “not to
touch the metal covering” because he did not want it “to be damaged.” Ashworth also
testified that after she removed the cover from the table and leaned it against the leg
of the table, she told Hall “not to touch it.” However, Hall specifically testified that
Cantrell did not give her any warnings about the freezer cover. Also, Cantrell, in his
deposition, further testified that, although it would have taken only one or two
seconds to replace the cover, he did not do so before he left the restaurant. Moreover,
in her deposition, Ashworth testified that, although Cantrell told both her and Hall not
to remove the cover from the table, she, in fact, removed the freezer cover from the
table and leaned it against the table leg on the floor. She also testified that, had she
followed Cantrell’s instruction not to remove the cover from the table, Hall’s injury
would not have occurred. Furthermore, both Cantrell and Ashworth testified in their
depositions that Sonic had a policy that required employees to pick up stray objects
from the floor and to put objects away after employees were finished with them.
          After taking the proof favorable to Hall as true, and indulging every reasonable
inference and resolving any doubts in favor of Hall, as we must, we conclude that
Hall raised a genuine issue of fact as to whether Sonic failed to exercise reasonable
care to reduce or eliminate any unreasonable risk of harm posed by the freezer cover. 
Accordingly, we hold that the summary judgment evidence did not conclusively
establish that Sonic exercised reasonable care to reduce or eliminate the risk posed
by the placement of the cover.
 
Proximate Cause
          To prove an action for premises defect, the invitee must establish that the
defendant’s lack of care proximately caused her injuries. Daenen, 15 S.W.3d at 99.
The components of proximate cause are (1) cause-in-fact and (2) foreseeability. 
Leitch v. Hornsby, 935 S.W.2d 114, 118–19 (Tex. 1996). 
          Cause-in-Fact
          Hall asserts that the summary judgment evidence shows that Sonic’s actions
in removing the freezer cover and placing it on the floor were substantial factors in
bringing about her injury. A defendant’s negligence is a cause-in-fact of the
plaintiff’s injuries if the negligent act or omission was a “substantial factor” in
bringing about the injury, without which the harm would not have occurred. Doe v.
Boys Clubs of Greater Dallas, 907 S.W.2d 472, 477 (Tex. 1995). 
          Sonic argues that its actions were not substantial factors in bringing about
Hall’s injury because Hall “alone decided to lift the covering and did so . . . despite
repeated instructions not to do so.” It also argues that any connection between its
actions and Hall’s injuries are simply “too attenuated.” In its summary judgment
motion, Sonic asserted that “Hall must have handled the cover in a way different from
the way anyone else ever handled it” or “that she must have done something to make
it dangerous to pick up.” 
          However, contrary to Sonic’s assertions, the simple fact remains that Hall 
testified that she picked up the freezer cover because she found it lying on the floor. 
Cantrell stated that he removed the freezer cover from the freezer and placed the
cover on the table. Ashworth stated that, in spite of Cantrell’s instructions to the
contrary, she did, in fact, remove the freezer cover from the table and place it on the
floor, leaning it against the leg of a table. Moreover, Ashworth testified in her
deposition that she “caused the accident” and that if she had “listened to Cantrell to
begin with and not touched that tabletop, nobody would have gotten hurt.” Cantrell
also testified in his deposition that if he had put the freezer cover back onto the
freezer, Hall would not have been injured. 
          We conclude that the summary judgment evidence raised a question of fact on
the issue of whether Sonic’s actions were substantial factors in bringing about Hall’s
injury. Accordingly, we hold that the summary judgment evidence did not
conclusively establish that Sonic’s conduct was not a cause-in-fact of Hall’s injury.          Foreseeability
          In regard to the foreseeability issue, Hall asserts that “it was foreseeable that
the freezer cover leaning on a table leg could slide to the floor and present a danger”
to an invitee. Sonic contends that the summary judgment evidence “conclusively
established” that the freezer cover “was safe and not foreseeably dangerous.”
          The Texas Supreme Court has stated that foreseeability “means that the actor, 
as a person of ordinary intelligence, should have anticipated the dangers that his
negligent act created for others.” Nixon, 690 S.W.2d at 549–50. Foreseeability does
not require that a person anticipate the precise manner in which an injury will occur
once he has created a dangerous situation through his negligence. Travis v. City of
Mesquite, 830 S.W.2d 94, 98 (Tex. 1992). Foreseeability requires only that the
general danger, not the exact sequence of events that produced the harm, be
foreseeable. Walker v. Harris, 924 S.W.2d 375, 377 (Tex. 1996). As emphasized by
the supreme court:
[I]t is not required that the particular accident complained of should
have been foreseen. All that is required is “that the injury be of such a
general character as might reasonably have been anticipated; and that
the injured party should be so situated with relation to the wrongful act
that injury to him or to one similarly situated might reasonably have
been foreseen.

Nixon, 690 S.W.2d at 551 (citations omitted) (emphasis in original). Thus, the
question of foreseeability involves a practical inquiry based on “common experience
applied to human conduct.” City of Gladewater v. Pike, 727 S.W.2d 514, 518 (Tex.
1987) (citations omitted). It asks whether the injury might reasonably have been
anticipated as a result of the defendant’s conduct. See id. at 517. However,
foreseeability requires more than someone, viewing the facts in retrospect, theorizing
an extraordinary sequence of events whereby the defendant’s conduct brings about
the injury. Boys Clubs of Greater Dallas, 907 S.W.2d at 478.
          In the instant case, the summary judgment evidence does show that both
Cantrell and Ashworth handled the freezer cover with their “bare hands” just before
Hall cut her hand. It also reveals that no one at the restaurant had ever been cut by
handling the freezer cover. Additionally, Cantrell had previously handled the freezer
cover on a few occasions and he had not noticed anything that would indicate that the
edges of the freezer cover were sharp. Such evidence supports an inference that
Sonic was not aware that the freezer cover could cause a person to suffer from a
laceration, but it does not conclusively negate the foreseeability of the danger posed. 
          As noted above, Hall testified that when she picked up the freezer cover from
the floor, the razor sharp edge of the cover sliced her hand open below her thumb. 
Although Cantrell had removed the cover on three or four occasions in the four years
preceding Hall’s injury, he had not inspected the cover for dangerousness prior to
laying it on the table. More importantly, Ashworth testified that she removed the
freezer cover from the table and leaned it against the table leg on the floor. Again,
a reasonable fact finder could infer that the very thin metal cover could easily slide
or fall from its position on the table leg. Furthermore, both Cantrell and Ashworth
testified that Sonic had a policy that required employees to pick up objects off of the
floor and to put objects away when they were not in use. Finally, Hall testified that
she picked up the freezer cover because she wanted to follow Sonic’s policy in
picking up objects from the floor and she wanted to make sure that the restaurant was
clean. 
          After taking the proof favorable to Hall as true, and indulging every reasonable
inference and resolving any doubts in favor of Hall, as we must, we conclude that
Hall raised a genuine issue of fact as to whether the general danger posed to Hall and
the general character of her injury should have been reasonably anticipated by Sonic. 
Accordingly, we hold that the summary judgment evidence did not conclusively
establish that the placement of the freezer cover was, as Sonic asserts, “safe and not
foreseeably dangerous.”
          Having concluded that Sonic did not conclusively disprove at least one of the
elements of Hall’s premises liability claim, we hold that the trial court erred in
granting Sonic’s summary judgment motion on the claim. 
          We sustain Hall’s first issue.
Assault
          In her second issue, Hall argues that the trial court erred in granting Sonic’s
and Cantrell’s summary judgment motion on her assault claim on the basis of
Cantrell’s statement that he did not “intend to injure” Hall because an “intent to
injure” is not a required element of an assault claim. 
          The elements of assault are the same in both the criminal and civil context. 
Forbes v. Lanzl, 9 S.W.3d 895, 900 (Tex. App.—Austin 2000, pet. denied). A person
commits an assault if the person: (1) intentionally, knowingly, or recklessly causes
bodily injury to another; (2) intentionally or knowingly threatens another with
imminent bodily injury; or (3) intentionally or knowingly causes physical contact
with another when the person knows or should reasonably believe that the other will
regard the contact as offensive or provocative. Tex. Pen. Code Ann. § 22.01(a)
(Vernon Supp. 2004-2005); Forbes, 9 S.W.3d at 900. 
          In their summary judgment motion, Sonic and Cantrell asserted that they
conclusively negated Hall’s assault claim as a matter of law because Cantrell stated
in his affidavit that he did not “intend to injure” Hall when he grabbed her hand and
attempted to force her to hold a french-fry scooper. However, because an assault, in
regard to bodily injury, can be committed either knowingly or recklessly, as well as
intentionally, Sonic is incorrect in its assertion that an “intent to injure” is the only
way for Hall to prevail on her assault claim. Price v. Short, 931 S.W.2d 677, 688
(Tex. App.—Dallas 1996, no writ). Because Sonic and Cantrell moved for summary
judgment based only upon the absence of Cantrell’s intent to injure, they did not
conclusively negate Hall’s assault claim as a matter of law. Accordingly, we hold that
the trial court erred in granting Sonic’s summary judgment motion on the assault
claim. 
          We sustain Hall’s second issue. 
Intentional Infliction of Emotional Distress
          In her third issue, Hall argues that the trial court erred in granting Sonic’s and
Cantrell’s summary judgment motion on her intentional infliction of emotional
distress claim because Sonic and Cantrell did not include the claim in their summary
judgment motion. 
          A motion for summary judgment must stand or fall on the grounds expressly
presented in the motion. Tex. R. Civ. P. 166a; Cincinnati Life Ins. Co. v. Cates, 927
S.W.2d 623, 625 (Tex. 1996); Perry v. Greanias, 95 S.W.3d 683, 700 (Tex.
App.—Houston [1st Dist.] 2002, pet. denied). We are restricted to reviewing the
propriety of the granting of the summary judgment on the basis of the grounds
actually asserted in the motion for summary judgment. Cates, 927 S.W.2d at 626;
Perry, 95 S.W.3d at 700–01. It is reversible error to grant a summary judgment
motion on a claim not addressed in the motion. Chessher v. Southwestern Bell Tel.
Co., 658 S.W.2d 563, 564 (Tex. 1983); Perry, 95 S.W.3d at 701. 
          Citing Cuyler v. Minns, 60 S.W.3d 209 (Tex. App.—Houston [14th Dist.]
2001, pet. denied), and Judwin Props., Inc. v. Griggs & Harrison, 911 S.W.2d 498
(Tex. App.—Houston [1st Dist.] 1995, no writ), Sonic argues that it has conclusively
disproved intentional infliction of emotional distress as a matter of law because Hall’s
assault and intentional infliction of emotional distress claims are based on the “same
essential facts,” i.e., Cantrell’s grabbing Hall’s arm and forcing her to scoop french
fries “with the intention of inflicting emotional distress.”
          In Cuyler, the plaintiff sued his former attorneys on claims of legal malpractice,
breach of contract, breach of fiduciary duty, and negligence, among other claims. 60
S.W.3d at 212. In response, the attorneys filed both traditional and no-evidence
summary judgment motions, which the trial court granted. Id. The appellate court
found that plaintiff’s breach of contract and breach of fiduciary duty claims
represented “an impermissible fracturing of her claim for legal malpractice.” Id. at
216. Thus, the court held that, since the traditional summary judgment on the
plaintiff’s legal malpractice claim was proper, summary judgment on the breach of
contract and breach of fiduciary duty causes of action was also proper. Id.
          In Judwin Properties, a law firm sued a client to recover for services rendered. 
911 S.W.2d at 500. In response, the client asserted counterclaims based on the firm’s
alleged disclosure of confidential and privileged information through the statement
of services that had been attached to the firm’s petition. Id. The firm then filed a
traditional summary judgment motion, asserting that it conclusively negated the
element of damages in each of the client’s causes of action. Id. at 501. Before the
summary judgment hearing, the client amended its counterclaim, alleging the same
facts that supported his original counterclaim but expressly adding that the firm’s
conduct constituted a breach of contract, breach of implied warranty, breach of
fiduciary duty, negligence, and gross negligence. Id. The trial court granted the
firm’s summary judgment motion. Id. On appeal, the client asserted that the trial
court improperly granted the firm’s motion because his counterclaims for breach of
implied warranty, breach of fiduciary duty, and negligence were not addressed in the
firm’s motion. Id. However, the appellate court affirmed the summary judgment for
the firm on the additional claims, holding that, because the client’s factual allegations
of damages made in his original counterclaim were, “on their face, couched in tort,
contract, and breach of fiduciary duty,” the law firm’s summary judgment motion
contemplated the claims eventually specified in the client’s amended counterclaim. 
Id. at 503.
          Here, however, Hall has not impermissibly fractured a claim; intentional
infliction of emotional distress and assault are two distinguishable torts. In order to
recover damages for intentional infliction of emotional distress, a plaintiff must
establish that: (1) the defendant acted intentionally or recklessly; (2) the defendant’s
conduct was extreme and outrageous; (3) the defendant’s actions caused the plaintiff
emotional distress; and (4) the resulting emotional distress was severe. GTE
Southwest, Inc. v. Bruce, 998 S.W.2d 605, 611 (Tex. 1999). In making such a claim,
a plaintiff does not have to establish that the defendant intentionally or recklessly
caused her to suffer a physical injury or intentionally or knowingly caused an
offensive or provocative contact. Hall’s allegation is that Cantrell’s actions,
regardless of any lack of intent to cause bodily injury or offensive contact, including
his belittling of her condition upon her return to work, caused her to suffer severe
emotional distress, not just a physical injury.
          Because Sonic and Cantrell’s summary judgment motion did not address Hall’s
intentional infliction of emotional distress claim, we hold that the trial court erred in
granting Sonic’s and Cantrell’s summary judgment motion as to this claim. 
          We sustain Hall’s third issue.
 
 
 
 
 
 
 
 
 
ConclusionHaving sustained all of Hall’s issues regarding her claims for premises
liability, assault, and intentional infliction of emotional distress, we reverse the
judgment of the trial court and remand the cause to the trial court for further
proceedings in accordance with this opinion.
 
 
                                                                        Terry Jennings
                                                                        Justice
 
Panel consists of Justices Taft, Jennings, and Bland.