Opinion issued August 11, 2011.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00492-CV

———————————

Thomas Farrar, Appellant

V.

Sabine
Management Corporation a/k/a Sabine Properties Management, Inc. and Northwest Building,
Ltd., Appellees



 



 

On Appeal from the 269th District Court

Harris County, Texas



Trial Court Case No. 2006-14247

 



 

OPINION

          Appellant
Thomas Farrar challenges the no-evidence summary judgment rendered in favor of
appellees Sabine Management Corporation a/k/a Sabine Properties Management,
Inc. (“Sabine”) and Northwest Building, Inc. (“Northwest”).  Farrar, a postal worker, sued Sabine and
Northwest after he slipped and fell while delivering mail at one of their
properties.  In his sole issue, he
contends that the trial court erred in granting the motion because the evidence
raised a genuine question of material fact as to each element of his
claim.  

We reverse and remand for further
proceedings. 

Background

          Sabine
and Northwest were responsible for the day-to-day management and maintenance of
an office building located at 13111 Northwest Freeway in Houston, Texas.  Sabine employed property manager Lori
Marshall and maintenance engineer Terry Elkins to conduct daily property-safety
inspections and routine maintenance. 
Marshall hired a company called ACI to evaluate the facility’s
compliance with the Americans with Disabilities Act (“ADA”).  Based on ACI’s recommendations, Marshall or
her employees would make improvements to the building to comply with the
ADA.  Farrar, a United States postal
worker, routinely made deliveries to the building.  In the normal course of a delivery, he would
park his postal truck, load mail onto a dolly, and wheel the dolly up a
wheelchair ramp located near the southeast entrance to the building.  

Approximately three weeks before
Farrar’s fall, ACI instructed Marshall to paint the wheelchair ramp located
near the building’s southeast entrance with a contrasting color to make it more
visible.  Marshall purchased “safety
paint” from a hardware store.  The store
employees advised Marshall that she should mix sand or gravel with the paint
before painting the outdoor surface to create traction and prevent slipping.  Marshall mixed some sand in with the paint
and proceeded to paint the wheelchair ramp a contrasting color.  After the paint dried, she tested the
slipperiness of the ramp by walking on it. 
Likewise, Elkins had several opportunities to walk up and down the ramp
after Marshall painted it, but neither Marshall nor Elkins could recall a
specific time when they walked on the ramp when it was wet from rain or other
precipitation.

Around 10:00 a.m. on a drizzly day
in March 2004, Farrar was making a special delivery to the building.  He parked his postal truck and walked toward
the southeast entrance carrying a single package and a hand-held scanning
device.  As he was walking up the
wheelchair ramp, he slipped and fell, hitting his head on the ground and injuring
his shoulder.  He lay on the ground for
several minutes but was eventually able to get up.  He noticed that his clothing was damp, but he
did not immediately complain about any pain or injuries.  Farrar picked up the package and his scanner
and walked inside the building.  He told
Marshall that he had slipped and fallen on the wheelchair ramp, and she told
him that earlier that morning, a man checking the building’s fire alarm system
had also slipped on the ramp.  After
talking with Marshall for several minutes, Farrar delivered the package he was
carrying and left the building.  

Following the incident, Farrar
returned to the postal station and completed an accident form.  He met with a supervisor who confirmed that
he was wearing slip-resistant postal shoes and sent him to a medical clinic.  The supervisor also sent someone to
investigate the incident.  The post
office investigator returned to the building and photographed the area where
Farrar had fallen.  The photographs
showed that the ramp had been barricaded on the day of the incident, and Farrar
stated that when he returned to work almost two weeks later the ramp was still
barricaded and its surface had been covered with sand.  Marshall and Elkins stated that the ramp was
later repainted and that more sand was added to the paint mixture in order to
prevent subsequent falls.

After the fall, Farrar complained
of pain in his lower back and left shoulder. 
He sued Sabine and Northwest for premises liability.  Sabine and Northwest filed a no-evidence motion
for summary judgment, to which Farrar filed a response.  Farrar attached to his first response a
portion of Marshall’s deposition testimony, his own sworn affidavit, and an
accident form completed by Marshall. 
Sabine and Northwest filed an amended no-evidence motion, arguing that
they were entitled to summary judgment because Farrar could offer no evidence
to prove (1) that Sabine and Northwest had actual or constructive knowledge of
a harmful condition on the premises; (2) that the condition posed an
unreasonable risk of harm, (3) that Sabine and Northwest failed to exercise
reasonable care; or (4) that Sabine and Northwest’s negligence was the
proximate cause of Farrar’s injuries. 

Farrar filed a response to the
amended motion in which he argued that there was enough evidence to raise a
genuine issue of material fact as to each of the challenged elements.  He attached transcripts from Marshall’s and
Elkins’ depositions, as well as a transcript from his own deposition to his
response.  Sabine and Northwest did not
object to any of the attached deposition testimony.  After considering all the evidence, the trial
court granted Sabine and Northwest’s motion. 
On appeal, Farrar argues that the trial court erred in granting summary
judgment because he raised an issue of material fact as to each of the
challenged elements.

Analysis

We review a trial court’s decision to grant a motion for
summary judgment de novo.  Valence
Operating Co. v. Dorsett,
164 S.W.3d 656, 661 (Tex. 2005).  A
no-evidence motion for summary judgment is essentially a pre-trial directed
verdict, to which we apply a legal-sufficiency standard of review.  King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 750–51 (Tex.
2003).  In general, a party seeking a
no-evidence summary judgment must assert that no evidence exists as to one or
more of the essential elements of the nonmovant’s claim on which the nonmovant
would have the burden of proof at trial. 
Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp., 994 S.W.2d 830, 834
(Tex. App.—Houston [1st Dist.] 1999, no pet.). 
Once the movant specifies the elements on which there is no evidence,
the burden shifts to the nonmovant to raise a fact issue on the challenged
elements.  Tex. R. Civ. P. 166a(i). 
A no-evidence summary judgment is improper if the nonmovant brings forth
more than a scintilla of probative evidence to raise a genuine issue of
material fact.  Id.; Forbes, Inc. v. Granada Bioscis., Inc., 124 S.W.3d 167, 172 (Tex. 2003).  “Less than a
scintilla of evidence exists when the evidence is so weak as to do no more than
create a mere surmise or suspicion of a fact.”  Forbes, 124 S.W.3d at 172.  “More than a scintilla of evidence exists if
it would allow reasonable and fair-minded people to differ in their
conclusions.”  Id.  As with a traditional summary judgment, we
view the evidence in the light most favorable to the nonmovant, disregarding
all contrary evidence and inferences.  Chapman, 118 S.W.3d at 751.

In this case, Farrar argues that the
trial court erred in granting Sabine and Northwest’s no-evidence motion for
summary judgment because his response and the attached deposition testimony
raised a question of material fact as to each of the challenged elements of his
claim.  Sabine and Northwest argue that
the motion was properly granted because Farrar failed to offer more than a
scintilla of relevant evidence to establish a claim for premises liability. 

It is undisputed that Farrar was Sabine
and Northwest’s invitee.  Accordingly, to
recover damages for premises liability, Farrar must establish that the premises
owner-operator had actual or constructive knowledge of a dangerous condition on
the premises that presented an unreasonable risk of harm and that the condition
proximately caused his injuries.  Brinson Ford, Inc. v. Alger, 228 S.W.3d
161, 162 (Tex. 2007).  The standard of
care required of the owner-operator toward its invitees is the ordinary care
that a reasonably prudent person would exercise under the same or similar
circumstances.  Corbin v. Safeway
Stores, Inc., 648 S.W.2d
292, 295 (Tex. 1983).  While a premises
owner-operator is not an insurer of its invitees’ safety, it must protect
invitees from conditions on the property that present an unreasonable risk of
harm.  Brinson Ford, 228 S.W.3d at 163 (citing CMH Homes, Inc. v. Daenen, 15 S.W.3d 97, 101 (Tex. 2000)).  As such, Sabine and Northwest owed Farrar a
duty to exercise reasonable care to protect him from known or reasonably
discoverable dangerous conditions on the property.  See
Wal-Mart Stores, Inc. v. Gonzalez, 968 S.W.2d 934, 936 (Tex. 1998).

1.                
Actual or constructive knowledge

Sabine and Northwest argue that Farrar presented no evidence
that they had actual or constructive knowledge of a dangerous condition on the
property and that there is no evidence of any prior incident that occurred on
the painted wheelchair ramp surface.  In
his response, Farrar argued that there was evidence that Sabine and Northwest
and its agents, Marshall and Elkins, knew or should have known that the painted
wheelchair ramp was slippery when wet from rain or other precipitation.  Farrar argued that Marshall knew that the
paint needed to be mixed with gravel or sand in order to give the painted
surface traction but that she only tested the slipperiness of the ramp under
dry conditions.  He contends that it was
drizzling that morning, that Marshall and Elkins should have known that the
painted surface was slippery when wet, and that proper inspection of the
ramp—by testing it in both dry and wet conditions—would have revealed the
dangerous condition.  He also contends
that Marshall told him that someone else had slipped on the ramp that morning
before he did.

As a threshold requirement in a premises liability claim,
the plaintiff must prove that the defendant had actual or constructive
knowledge of a premises defect.  Motel 6 G.P., Inc. v. Lopez, 929 S.W.2d
1, 3 (Tex. 1996).  A plaintiff may prove
notice by establishing that the defendant actually knew that the condition was
dangerous or that it is more likely than not that the condition existed long
enough to give the owner-operator a reasonable opportunity to discover it.  See
Wal-Mart Stores, Inc. v. Reece, 81 S.W.3d 812, 814 (Tex. 2002).  While there is no one test for determining
actual knowledge that a condition presents an unreasonable risk of harm, a
relevant consideration is whether the owner-operator has received prior reports
of the danger presented by the condition or prior reports of injuries.  Univ.
of Tex.-Pan Am. v. Aguilar, 251 S.W.3d 511, 513 (Tex. 2008) (citing Brinson Ford, 228 S.W.3d at 163).  Additionally, “[t]he fact that the owner or
occupier of a premises created a condition that posed an unreasonable risk of
harm may support an inference of knowledge.” 
Rice Food Mkt., Inc. v. Hicks,
111 S.W.3d 610, 613 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (quoting Keetch v. Kroger Co., 845 S.W.2d 262,
265 (Tex. 1992)) (internal quotation marks omitted).  Constructive knowledge, which is defined as
knowledge that a person, after reasonable inspection, ought to have or has
reason to have, may be imputed when the premises owner-operator had a
reasonable opportunity to discover and to remedy an allegedly dangerous
condition.  Reece, 81 S.W.3d at 814; Hall
v. Sonic Drive-In of Angleton, Inc., 177 S.W.3d 636, 645 (Tex. App.—Houston
[1st Dist.] 2005, pet. denied).

Farrar attached four deposition transcripts to his response,
including his own and Marshall’s.  Farrar
testified that on the day he slipped, the ramp was exposed to the elements and
was wet from rain.  He had not delivered
mail to the building for several weeks prior to the day of his fall, but on
that day, he noticed that the wheelchair ramp had been painted.  Farrar’s uncontroverted deposition testimony
was that after he fell, he spoke with Marshall, who told him that the person
who had come to check the fire alarm earlier that morning had also slipped on the
wheelchair ramp.

Sabine and Northwest argue that Farrar failed to present
evidence of actual or constructive knowledge because he did not proffer
evidence of a prior fall or a report involving injury.  But whether an injury actually occurs prior
to an incident is not conclusive on the question of whether the defendant knew
or should have known that the condition created an unreasonable risk of
harm.  See Safeway Stores, Inc. v. Scamardo, 673 S.W.2d 371, 373 (Tex.
App.—Houston [1st Dist.] 1984, no writ). 
When there is evidence of notice to a property owner or operator of a
prior similar occurrence—here, evidence of Marshall’s knowledge of a near fall
attributable to the same condition—such evidence is probative as to the
question of notice.  See Klorer, 717 S.W.2d at 760. 

We conclude that the record contained more than a scintilla
of evidence that Sabine and Northwest had notice of the alleged defect.  See
Tex. S. Univ. v. Gilford, 277 S.W.3d 65, 70–71 (Tex. App.—Houston [1st
Dist.] 2009, pet. denied) (holding that evidence of prior complaints raised
fact question regarding defendant’s actual knowledge); see also Klorer v. Block, 717 S.W.2d 754, 760 (Tex. App.—San
Antonio 1986, writ ref’d n.r.e.) (holding that evidence of similar incidents is
probative as to notice element in premises liability case).

Likewise, “‘The fact that the owner or occupier of a
premises created a condition that posed an unreasonable risk of harm may
support an inference of knowledge.’”  Hall, 177 S.W.3d at 645 (citing Keetch, 845 S.W.2d at 265).  Marshall painted the ramp.  She testified that she knew that a painted
wheelchair ramp could be slippery because the employees at the hardware store
where she purchased the paint instructed her to add sand to it in order to
“make [the painted surface] a little more non-slip.”  Marshall testified that she mixed the paint
with sand and painted the concrete surface of the wheelchair ramp.  She further testified that afterwards she
walked on the ramp to make sure that it was not slippery.  Marshall admitted she never tested the
slipperiness of the ramp when it was wet even though it was exposed to the
elements and she knew that it would be wet if it was raining.  

Viewing the evidence in the light most favorable to Farrar,
we hold that it was sufficient to raise a question of material fact as to
Sabine and Northwest’s knowledge of the condition.  See
Tex. R. Civ. P. 166a(i); Forbes, 124 S.W.3d at 172.

2.                
Condition posed unreasonable risk of
harm

Sabine and Northwest also contend that summary judgment was
properly granted because Farrar presented no evidence that the painted
wheelchair ramp was unreasonably dangerous. 
Farrar argues that Sabine and Northwest had a duty to make the
wheelchair ramp reasonably safe for people entering and exiting the
building.  He contends that Sabine and
Northwest created an unreasonable risk of harm to persons entering and exiting
the building because they painted the wheelchair ramp to make it more visible
and the ramp was slippery when wet.

A condition poses an unreasonable risk of harm when there is
a “sufficient probability of a harmful event occurring that a reasonably
prudent person would have foreseen it or some similar event as likely to
happen.”  Hall, 177 S.W.3d at 646 (quoting Cnty. of Cameron v. Brown, 80 S.W.3d 549, 556 (Tex. 2002))
(internal quotation marks omitted). 
“Foreseeability in this context ‘does not require that the exact
sequence of events that produced an injury be foreseeable.’  Instead, only the general damage must be
foreseeable.”  Id. (quoting Cnty. of Cameron,
80 S.W.3d at 556) (internal citations omitted). 
Evidence of a similar injury or complaint caused by the condition is
probative on the question of whether the condition posed an unreasonable risk
of harm.  Id.; see also Klorer, 717
S.W.2d at 761.  Whether a particular condition poses an
unreasonable risk of harm is generally fact specific, and there is no
definitive test for determining whether a specific condition presents an
unreasonable risk of harm.  Hall, 177 S.W.3d at 656 (citing Reliable Consultants, Inc. v. Jaquez, 25
S.W.3d 336, 342 (Tex. App.—Austin 2000, pet. denied)).

The deposition testimony attached to Farrar’s response
demonstrates that it was reasonably foreseeable that an improperly painted
wheelchair ramp could be slippery under any weather conditions and that a
person entering and exiting the building could be injured if they slipped.  Specifically, the hardware store employees
informed Marshall that she should mix sand or some other anti-slip additive
with the paint before painting the wheelchair ramp because improperly painted
concrete surfaces can be slippery.  The
evidence also showed that this particular wheelchair ramp was used by people
entering and exiting the building and that it was exposed to the elements.  Farrar testified that it had been drizzling
on the morning of his fall, and his deposition testimony shows that Marshall
was aware of at least one complaint that the wheelchair ramp was slippery before
he fell.  

“[E]vidence of other falls or near falls attributable to the
same conditions is recognized as probative evidence in determining whether such
condition presents an unreasonable risk of harm. . . .”  Klorer,
717 S.W.2d at 761.  When, as in this
case, there is evidence that the similar slips (both Farrar and the man
checking the building’s fire alarm system complained that they slipped on the
painted wheelchair ramp) arose out of the same inanimate cause or condition
(both slipped on the painted wheelchair ramp when it was wet from rain), such
evidence raises a fact question as to whether the condition presents an
unreasonable risk of harm.  See id.

Sabine and Northwest argue that “the fact that Farrar fell
on the ramp does not necessarily lead to the conclusion that the ramp was
unreasonably dangerous.”  While it is
true that this evidence is not conclusive, it is probative of the fact that the
painted wheelchair ramp was unreasonably dangerous.  Seideneck
v. Cal Bayreuther Assocs., 451 S.W.2d 752, 754 (Tex. 1970); Hall, 177 S.W.3d at 646.  Accordingly, we conclude that Farrar’s
evidence raised a question of material fact as to whether the painted
wheelchair ramp created an unreasonable risk of harm.

3.                
Owner-operator did not exercise
reasonable care

In their motion for summary judgment, Sabine and Northwest
argued that there was no evidence to establish that they breached a duty to
Farrar.  Farrar argued in his response
that Sabine and Northwest did not exercise reasonable care to reduce or
eliminate the risk of harm to people entering and exiting the building using
the painted wheelchair ramp.  

A defendant breaches its duty of care if it fails to
exercise ordinary care to protect the plaintiff from danger by failing to
adequately warn the plaintiff of the condition and by failing to make the
condition reasonably safe.  See Reece, 81 S.W.3d at 814; CMH Homes, 15 S.W.3d at 101.  The duty to use ordinary care toward invitees
includes the duty to inspect the premises, and the premises owner-operator is
charged with constructive knowledge of any premises defect or other dangerous
condition that a reasonably careful inspection would have revealed.  See CMH
Homes, 15 S.W.3d at 101; Corbin,
648 S.W.2d at 295.  When an
owner-operator has notice of a condition on the premises that poses an
unreasonable risk of harm, he has a duty to take whatever action is reasonably
prudent under the circumstances to reduce or eliminate the unreasonable
risk.  Corbin, 648 S.W.2d at 295.

Marshall’s deposition testimony reflects that she knew that
people entering and exiting the building could slip and fall on a painted
concrete surface.  Marshall testified
that she had never painted a wheelchair ramp before.  She made an effort to make the surface safe
by talking with the employees at the hardware store about how she intended to
use the paint and by mixing some sand in with it per their instructions, but
she did not confirm with them that the work had been done properly.  She did not test the ramp in wet and dry
conditions, and she did not have the ramp inspected by ACI to confirm that it
complied with ADA requirements.  Farrar’s
unobjected-to deposition testimony showed that at least two people slipped on
the ramp when it was wet.  Moreover,
Marshall and Elkins testified that after Farrar slipped and fell they
barricaded the wheelchair ramp for a period of approximately ten days and
repainted the surface using paint with a higher sand-to-paint ratio in order to
prevent others from slipping.  But before
Farrar’s fall, there was no sign, barricade, or other warning indicating that
the painted ramp was slippery when wet.  See TXI Operations, L.P. v. Perry, 278
S.W.3d 763, 764–65 (Tex. 2009).

Taking the proof favorable to Farrar as true, and indulging
every reasonable inference and resolving any doubts in his favor, as we must,
we conclude that Farrar raised a genuine issue of material fact as to whether
Sabine and Northwest failed to exercise reasonable care to reduce or eliminate
any unreasonable risk of harm created by the painted wheelchair ramp.  See
Tex. R. Civ. P. 166a(i); Forbes, 124 S.W.3d at 172.

4.                
Failure to exercise reasonable care proximately caused
plaintiff’s injuries

 

Sabine and Northwest argue that Farrar did not present evidence
of proximate cause.  Farrar argues that
he was injured when he slipped and fell on the wet wheelchair ramp and that it
was foreseeable that such an injury would occur because an improperly painted
wheelchair ramp can become slippery when wet.

To prevail in an action for premises liability, an invitee
must establish that the defendant’s lack of care proximately caused his
injuries.  CMH Homes, 15 S.W.3d at 99; Hall,
177 S.W.3d at 647.  Proximate cause
consists of cause-in-fact and foreseeability. 
Leitch v. Hornsby, 935 S.W.2d
114, 118 (Tex. 1996).  A defendant’s
negligence is the cause-in-fact of the plaintiff’s injuries if the negligent
act or omission was a substantial factor in bringing about the injury, without
which the harm would not have occurred.  Hall, 177 S.W.3d at 648.  Foreseeability “means that the actor, as a
person of ordinary intelligence, should have anticipated the dangers that his
negligent act created for others.”  Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d
546, 549–50 (Tex. 1985).  It requires
only that the general danger, not the exact sequence of events that produced
the harm, be foreseeable.  Walker v. Harris, 924 S.W.2d 375, 377
(Tex. 1996); Hall, 177 S.W.3d at 648.

Farrar testified during his deposition that he slipped when
he was walking up the wheelchair ramp to deliver mail to the building.  He further testified that it was raining and
that the wheelchair ramp was wet.  After
he fell he noticed that the back of his clothing was wet.  There was also evidence that Marshall never
confirmed with the home improvement store employees or other professionals that
she had been done the work properly.  She
did not test the ramp in wet and dry conditions, although the ramp was exposed
to the elements and she knew that it would be wet if it was raining, and she
did not have the ramp inspected by ACI to confirm that it complied with ADA
requirements.

In their motion for summary judgment, Sabine and Northwest
complained that Farrar had not designated a liability expert to establish
foreseeability.  While expert testimony
under the circumstances might be helpful, it is not required to establish
causation “[w]hen a layperson’s common understanding and general experience
enable her to determine, with reasonable probability, the causal relationship
between the event and the condition. . . .” 
Towers of Town Lake Condo. Ass’n,
Inc. v. Rouhani, 296 S.W.3d 290, 298–99 (Tex. App.—Austin 2009, pet.
denied).  Under the circumstances,
Farrar’s and Marshall’s deposition testimony constitutes some evidence of
causation.  See id. at 299.  Because
Farrar’s testimony that he fell on the painted wheelchair ramp when it was wet
from rain, together with Marshall’s testimony, raises a question of material
fact as to whether Marshall’s negligence caused Farrar’s fall, we hold that
Farrar met his summary judgment burden as to the element of causation.  See
Tex. R. Civ. P. 166a(i); Forbes, 124 S.W.3d at 172.

Having concluded that Farrar raised a question of material
fact as to each of the elements of premises liability challenged in Sabine and
Northwest’s no-evidence motion for summary judgment, we hold that the trial
court erred in granting summary judgment in favor of Sabine and Northwest, and
we sustain Farrar’s sole issue.

Conclusion

          We reverse the judgment of the trial
court and remand the cause to the trial court for further proceedings in
accordance with this opinion.

 

 

                                                                   Evelyn
V. Keyes

                                                                   Justice


 

Panel consists of Justices Keyes, Sharp, and
Massengale.

Justice Massengale, dissenting.