# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 16, 2022

Lyle W. Cayce
Clerk

No. 21-20354

Taine Rockwell,

*Plaintiff—Appellant*,

*versus*

Sprouts Farmers Market Texas, L.P.; Sprouts Farmers
Market Holdings, L.L.C.,

*Defendants—Appellees*.

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:19-CV-2308

---

Before Willett, Engelhardt, and Wilson, *Circuit Judges*.

Per Curiam:*

Taine Rockwell sued Sprouts Farmers Market after she slipped and fell in the produce section of one of its stores.  The district court granted summary judgment for Sprouts, finding that Rockwell failed to demonstrate

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

a fact dispute on the notice element of her premises-liability claim. We reverse and remand for further proceedings.

## I.

In 2018, Rockwell slipped on "a puddle of water or similar liquid" and fell in front of the wet rack in the produce section of a Sprouts grocery store in Houston, injuring her knee. Prior to Rockwell's fall, a Sprouts employee had been stocking the wet rack with produce from boxes loaded on a cart.

Rockwell sued Sprouts in Texas state court, alleging premises liability under Texas law and over $200,000 in damages. Sprouts removed the case to federal court on the basis of diversity jurisdiction. After discovery closed, Sprouts moved for summary judgment, contending that Rockwell did not produce sufficient evidence for a reasonable jury to find that Sprouts had actual or constructive knowledge of the dangerous condition, i.e., the puddle of liquid that caused her to slip and fall.

The summary judgment record is robust. Among other things, the record contains: (1) depositions of various Sprouts employees, Rockwell, and an eyewitness shopper; (2) surveillance camera footage; (3) a video taken by Rockwell using her cell phone after she fell; and (4) several Sprouts business records. Reviewing this evidence, the district court agreed that Rockwell failed to produce sufficient evidence of Sprouts's actual or constructive knowledge of the "puddle" and granted summary judgment for Sprouts. Rockwell timely appealed.

## II.

"This court reviews a grant of summary judgment de novo, applying the same standard as the district court." *Renfroe v. Parker*, 974 F.3d 594, 599 (5th Cir. 2020). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A "material" fact is one "that

might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And "[a] dispute as to a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).  We must view the evidence "in the light most favorable to the non-moving party," drawing "all justifiable inferences . . . in the non-movant's favor." *Env't Conservation Org. v. City of Dall.*, 529 F.3d 519, 524 (5th Cir. 2008).

## III.

Under Texas law, a slip-and-fall plaintiff must show, *inter alia*, that the premises owner "had actual or constructive notice of the spill" that caused her to slip and fall.  *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814 (Tex. 2002).  A plaintiff may prove notice "by establishing that (1) the defendant placed the substance on the floor, (2) the defendant actually knew that the substance was on the floor, or (3) it is more likely than not that the condition existed long enough to give the premises owner a reasonable opportunity to discover it."  *Id.*  "To prove any of these three propositions, '[p]laintiffs may rely upon [either] direct [or] circumstantial evidence.'" *Garcia v. Wal-Mart Stores Tex., L.L.C.*, 893 F.3d 278, 279 (5th Cir. 2018) (alterations in original) (quoting *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 358 (5th Cir. 2017)).

Rockwell contends that the summary judgment record creates a fact dispute as to Sprouts's notice in three respects.[1]  First, she asserts that there

---

[1] Rockwell also contends that summary judgment was inappropriate because Sprouts challenged only her premises-liability claim.  She asserts that her complaint also alleged claims for ordinary negligence, negligent training, and negligent supervision.  The only possible references to those theories come in subsections of a paragraph in the complaint that emphasizes Sprouts's duty to Rockwell as an invitee.  Although Federal Rule of Civil Procedure 8 does not require an inordinate amount of precision, Rockwell's threadbare allegations were insufficient to put Sprouts and the district court on notice of these additional claims.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating a

is sufficient evidence from which a reasonable jury could conclude that a Sprouts employee created the condition by allowing water to leak from his cart onto the floor.  Second, relying on *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292 (Tex. 1983), she argues that actual or constructive notice of the puddle may be inferred from Sprouts's knowledge that the wet rack in its produce section creates an unusually high risk of slip-and-fall accidents.  Finally, she asserts that constructive notice can be inferred from the Sprouts employee's proximity to where she fell.  Because we find merit in Rockwell's first contention, we do not address her others.

"Historically, a plaintiff [in Texas] could prove actual or constructive knowledge of the dangerous condition by showing *only* that the owner/operator created the dangerous condition."  *Richardson v. Wal-Mart Stores, Inc.*, 963 S.W.2d 162, 165 (Tex. App.—Texarkana 1998, no pet.) (emphasis added).  That standard was modified in *Keetch v. Kroger Co.*, 845 S.W.2d 262 (Tex. 1992).  The *Keetch* court explained:

> The fact that the owner or occupier of a premises created a condition that posed an unreasonable risk of harm may support an inference of knowledge. However, the jury still must find that the owner or occupier knew or should have known of the condition.  Making the inference as a matter of law is improper unless knowledge is uncontroverted.

*Id.* at 265 (footnote and citation omitted).

Though Texas courts have varied in their interpretations of *Keetch*, the majority approach—at least in the summary judgment context—was outlined by this court in *Garcia*, 893 F.3d at 280–81.  The defendant in *Garcia*, Wal-Mart, relied on *Keetch* "for the broad proposition that

---

complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (internal quotation marks and citation omitted)); *see also Bejil v. Ethicon, Inc.*, 269 F.3d 477, 481 (5th Cir. 2001); *Putty v. Fed. Nat'l Mortg. Ass'n*, 736 F. App'x 484, 485 (5th Cir. 2018).

circumstantial creation evidence never suffices to create a fact issue on notice of the spill where the defendant denies knowledge." *Id.* at 280. In rejecting that construction, this court explained that *Keetch* merely held "that the inference cannot be made *as a matter of law*." *Id.* (emphasis in original). It did not alter the rule that creation evidence, if sufficiently non-speculative, *may* establish a fact dispute regarding a defendant's knowledge appropriate for jury resolution. *See id.* at 280–81; *see also Jefferson Cnty. v. Akins*, 487 S.W.3d 216, 228 (Tex. App.—Beaumont 2016, pet. denied); *Hall v. Sonic Drive-In of Angleton, Inc.*, 177 S.W.3d 636, 645–46 (Tex. App.—Hous. [1st Dist.] 2005, pet. denied).

*Garcia*, like the present case, involved a motion for summary judgment challenging only the notice element of the plaintiff's premises-liability claim. *Garcia*, 893 F.3d at 279. The record there evidenced the following:

> The incident was caught on the store's video surveillance. At 5:56 a.m., a Wal-Mart employee operating an auto-scrubber machine passed over the area of the accident. The auto-scrubber works by dispensing cleaning solution on the floor, scrubbing the floor, and squeegeeing the remaining solution. The machine paused briefly where the floor changes from brown tile to white vinyl flooring—the spot where Garcia would fall. The auto-scrubber operator then left the area without checking for wet spots, trail mopping the uneven area, or posting warning signs of spillage. Garcia claims this was all contrary to Wal-Mart's operating procedures and safety policies related to auto-scrubber use, which require that "Wet Floor" signs be placed in areas "to be scrubbed," and that employees "trail mop anything left behind by the scrubber," "during turns, along edges, or left in low spots."
>
> Over the course of the next twenty-five minutes, thirteen customers and employees walked past or through the accident scene without slipping or checking for wet spots. At around 6:07, an employee of the McDonald's franchise located inside

the Wal-Mart pulled a trash bin through the area; and again at 6:15, another McDonald's employee dragged a second trash bin over the spot of the fall. At 6:21, Garcia entered the store and slipped on what he describes as "the exact spot where the auto scrubber had earlier paused."

*Id.* at 278–79 (cleaned up). Garcia argued that these facts "supported [an] inference that the spillage came from the auto-scrubber" and, thus, established a fact dispute for jury resolution as to notice. *Id.* at 279. This court agreed, emphasizing that the plaintiff's creation theory was "supported by multiple, particularized indicia: The auto-scrubber pause[d] where the level of the floor change[d]; liquid tend[ed] to accumulate in uneven areas; and, per the post-slip cleanup effort, the spill was a concentrated puddle (rather than a trail created by a leaking garbage bin)." *Id.* at 282.[2]

As in *Garcia*, the entire incident here was captured by Sprouts's surveillance camera. Rockwell asserts that the surveillance video, particularly coupled with the testimony of several Sprouts employees and a shopper who was in the produce aisle when Rockwell fell, raises a fact dispute

---

[2] Federal courts sitting in diversity apply federal procedural law. *Camacho v. Ford Motor Co.*, 993 F.3d 308, 311 (5th Cir. 2021). *Garcia* appears to have relied upon Texas law standards governing the quantum of evidence needed to create a fact dispute sufficient to defeat summary judgment. *See* 893 F.3d at 282 ("The real question is whether Garcia's entire story, uncorroborated assumptions and all, is more plausible than Wal-Mart's proposed alternatives."); *see also id.* at 281 n.6 (citing *Summers v. Fort Crockett Hotel, Ltd.*, 902 S.W.2d 20, 25 (Tex. App.—Hous. [1st Dist.] 1995, writ denied)). To the extent *Garcia* could be read to have turned on state procedural standards instead of those governing Federal Rule of Civil Procedure 56, we clarify that this court adheres to the requirements of Rule 56 in weighing the merits of summary judgment. *See Gahagan v. U.S. Citizenship & Immigr. Servs.*, 911 F.3d 298, 302 (5th Cir. 2018) ("[A]n opinion is not binding precedent on an issue 'never squarely addressed' even if the opinion 'assumed' one resolution of the issue.") (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993)). The point for today's case is that *Garcia*, based on very similar facts, held that the creation evidence there gave rise to a material fact dispute regarding notice under Texas premises liability law, such that summary judgment was improper. *See Garcia*, 893 F.3d at 280–82.

regarding Sprouts's knowledge of the spill. She contends that this evidence indicates that the liquid on the floor came from Sprouts's employee and cart, such that the store had at least constructive knowledge.

The video footage shows that at 2:22 p.m., a Sprouts employee began stocking the wet rack with produce from boxes loaded on a cart. At 2:27, the cart was positioned just a couple feet away from where Rockwell fell, and it remained there for close to seven minutes. During this time, the employee carried a box from the cart directly over the spot in question. At 2:34, the employee moved the cart several feet down the wet rack. Rockwell slipped and fell around eight minutes later. Afterwards, the cart sat in the same position down the wet rack for close to seven more minutes. When the employee moved the cart again, he appeared to notice liquid on the floor where the cart had been stationed. He wiped that area down with towels before setting up a wet floor sign and moving the cart further down the produce aisle.

In addition to the surveillance video, the record contains deposition testimony from the eyewitness shopper, the employee depicted in the video, and Sprouts's store manager. The shopper, who turned around as Rockwell was falling, testified that he saw "a small amount of water" on the floor immediately after her fall that looked like "a shoe had sort of spread it out further."[3] Both the employee and manager testified that, in the words of the manager, "either water or condensation or the juice from the produce" can leak out of produce boxes loaded on carts like the one present when Rockwell fell. The employee confirmed that he had seen this happen in the past. And the manager indicated that because liquid or pieces of produce could fall through, it was "common practice" for employees to clean up behind the store's produce carts.

---

[3] The shopper's deposition testimony is consistent with his statement, captured by Rockwell just moments after her fall using her phone's video camera, that he saw "water smeared across the floor."

Sprouts counters that the foregoing evidence is simply too speculative to generate a fact dispute regarding the store's notice of the hazardous condition. It points to the fact that the eyewitness shopper—i.e., the only witness who testified that there was water on the floor where Rockwell fell—also testified after watching the surveillance video that the employee's cart never traversed the exact spot where the liquid was. Instead, the witness stated the cart traveled "a foot or 2, probably more like 2 feet," from where he saw water. Sprouts also emphasizes that from the time the employee began stocking the wet rack until Rockwell's fall, roughly 31 customers passed through the general area of the incident. Thus, Sprouts theorizes that it is equally, if not more plausible that "one of these customers may have been the person who actually dripped water onto the floor."

But if anything, Sprouts's assertions confirm that a genuine dispute exists as to a material fact—i.e., its creation of the spill. We observed in *Garcia* that in the time between the wet spot's alleged creation and the plaintiff's fall, fifteen individuals passed through the area in question, two of whom were restaurant employees dragging trash bins. *Garcia*, 893 F.3d at 279. Despite the distinct possibility that one of those passers-by caused the wet spot, we found the plaintiff's creation theory sufficient to create a fact dispute as to notice because it was "supported by multiple, particularized indicia." *Id.* at 282.

The same is true for Rockwell's theory here. The summary judgment record, viewed most favorably to Rockwell, demonstrates that: (1) produce boxes and, consequently, the store's produce carts, had been susceptible to leakage in the past; (2) the cart in question was stationed "a foot or 2" away from where Rockwell slipped for seven minutes; (3) the employee stocking produce carried a box directly over the spot where Rockwell fell; (4) and the cart appeared to be leaking after having been "parked" for about seven minutes following Rockwell's fall just down the wet rack from where the accident occurred. This evidence is sufficient to give rise to a genuine dispute of material fact regarding Sprouts's notice of the spill. *See Garcia*,

No. 21-20354

893 F.3d at 280–82. Accordingly, we REVERSE the district court's grant of summary judgment in favor of Sprouts and REMAND for further proceedings. We place no limitation on the matters that the district court can address on remand.

REVERSED AND REMANDED.